STATE *vs.* JOSEPH BADNELLEY.

MAY 29, 1911.

PRESENT: Dubois, C. J., Johnson, Parkhurst, and Sweetland, JJ.

(1) *Criminal Law.   New Trial.*

The general rule laid down in *Wilcox* v. *R. I. Co.*, 29 R. I. 292, that the verdict of a jury when approved by the justice who presided at the trial, will be sustained by the court, in the absence of anything to indicate that the jury were improperly influenced or that the judge erred in his ruling, can properly be applied also in criminal cases and for the same reasons.

(2) *Rape.   Evidence.   Hearsay Rule.   Res Gestæ.*

A statement of the prosecutrix made on the street about half past three o'clock, about an hour after the assault was alleged to have occurred in the house, is admissible as a part of the *res gestae*, where it appears that she had made previous complaints to members of the household as they arrived soon after the commission of the offence and also accused defendant to his face when he arrived after being sent for, her conduct appearing perfectly consistent in her complaints and accusal.

(3) *Evidence.*

Where a witness had testified that the prosecutrix had made a complaint to him as chief of police, "Q. Against whom?"—exception—A. (defendant). Q. "And in consequence of the complaint did you issue the complaint in this case?   A. I did."

*Held,* that defendant was not prejudiced.

CRIMINAL COMPLAINT. Heard on exceptions of defendant and overruled.

DUBOIS, C. J.   This is an indictment for an assault with intent to commit rape, tried in the Superior Court within and for the county of Newport.   In the course of the trial the defendant took exception to certain rulings of the court and after verdict of guilty filed his motion for a new trial which was denied by the court and thereupon the defendant also took an exception to this action of the court.   The case came to this court upon the defendant's bill of exceptions whereof the defendant now relies upon the following:

"Second:   That the justice presiding erred in his refusal to

grant the defendant's motion for a new trial, which said motion was based upon the following grounds, namely:

1st.   That the verdict of the jury was against the evidence.

2nd.   That the verdict of the jury was against the law."

"Fourth: That during the trial of said indictment the Assistant Attorney General asked Jacob Eisinger the following question: ' Q. 32. Did your wife tell you then what had occurred between her and Joseph Badnelley?' To which question the defendant objected and his objection being overruled, exception was duly taken and said question was answered.

"Fifth: That during the trial of said indictment the Assistant Attorney General asked Jacob Eisinger the following question: ' What did your wife tell you about this affair?' To which question the defendant objected and his objection being overruled, exception was duly taken and said question was answered.

"Sixth: That during the trial of said indictment the Assistant Attorney General asked James R. Crowley, Chief of Police, the following question: ' Q. 12. Against whom?' To which question the defendant objected and his objection being overruled, exception was duly taken and said question was answered.

"Seventh: That during the trial of said indictment the attorney for the defendant asked Martha Schreir the following question: ' Did you then tell her that there were only three in the family?' To which question the Assistant Attorney General objected, his objection was sustained and the witness was not allowed to answer and exception was duly taken."

"Ninth: That the defendant requested the Justice presiding to charge as follows: ' Before you will be warranted in finding this defendant guilty of this offence, you should weigh and scrutinize the testimony of the complainant very carefully in order that the presumption of innocence which obtains in favor of the accused shall be fully and clearly overcome.' Which request was denied and exception duly taken."

The first of the foregoing exceptions involves a consideration

of whether the verdict was against the law and the evidence. Nothing has been suggested to us either in the briefs or in the argument that might be of assistance in determining in what particular, if any, the jury disregarded the law laid down by the trial court for their guidance, nor have we been able to discover that they erred in that respect. Therefore the verdict cannot be held to be invalid for that reason.

There was evidence tending to support the charge against the defendant, evidence of inclination and opportunity, of early complaint by the prosecutrix, corroborative evidence of physical objective symptoms, condition of clothing, etc. The defence was an *alibi*. The evidence was conflicting and therefore it was the duty of the jury to pass upon the veracity of the various witnesses and the credibility of the testimony given by them. In the absence of any evidence to the contrary it is to be presumed that they faithfully performed that duty. They were in a position and condition suitable for its performance. Their attention was undoubtedly attracted by the gravity of the occasion and their senses were stimulated by the desire to ascertain the truth in a case involving a grave charge against one of their own sex. In the consideration of the matter they undoubtedly did endeavor to discover what motive an apparently respectable woman could have for making such a charge, if untrue. In the circumstances of this case the behavior and appearance of the witnesses upon the stand and in the court room under the observation of the jury was of necessity of great value to them in the determination of the case. A careful examination of the transcript does not reveal any error upon the part of the jury. But not only have the jury found the defendant guilty beyond a reasonable doubt, but the trial justice, who also saw and observed the witnesses, has approved (1) of the verdict and thereby added the weight of his approval to the finding of the jury. A verdict so approved will not be disturbed save for the best of reasons. The rule applicable in civil cases can properly be applied also in criminal cases and for the same reasons. See *Wilcox* v. *The Rhode Island Company*, 29 R. I. 292.

The fourth and fifth exceptions relate to the following questions propounded to Jacob Eisenger, husband of the prosecutrix: "Q. 32. Did your wife tell you then what had occurred between her and Joseph Badnelley?" The question itself is unobjectionable because it calls for a categorical answer in the affirmative or negative, as the case may be, but was afterwards changed at the suggestion of the court to "What did your wife tell you about this affair?" The answer given as finally translated by the interpreter was: "First she could not talk; then she told me that he attempted to commit a rape on her." This court has held that "What the prosecutrix said to a person in the house about the affair immediately after its occurrence, was clearly a part of the *res gestae*." *State* v. *Fitzsimon*, 18 R. I. 236, 241, citing *State* v. *Murphy*, 16 R. I. 528; *McCombs* v. *The State*, 8 Ohio St., 643; *Rex* v. *Clarke*, 2 Starkie, 241; *The State* v. *Patrick*, 107 Mo. 147, 163, 168.

(2)     In *State* v. *Murphy*, *supra*, this court said (p. 530)—"The admissibility of this kind of testimony has been much discussed, but it is now settled beyond question that, to some extent at least, statements immediately following and connected with a transaction, which otherwise would be mere hearsay, are admissible as a part of the transaction itself. The principle upon which the admission of such evidence rests is, that declarations after an act may, nevertheless, spring so naturally and involuntarily from the thing done as to reveal its character, and thus belong to it and be a part of it; also to rebut all inference of calculation in making the declarations, and thus to entitle them to credit and weight as evidence of the transaction itself. So numerous have been the adjudications upon this point that the difficulty does not now lie in ascertaining whether testimony of this kind is admissible, but in determining to what extent and under what circumstances it is admissible."

It is true that the complaint in question was made on the street about half past three o'clock and that the assault complained of occurred in the house about an hour before, but the prosecutrix had made complaint in the house to members of

the household as they arrived soon after the commission of the offence and accused the defendant to his face when he arrived after having been sent for. Her conduct appears to have been perfectly consistent in her complaints and accusal and the complaint in question may well be regarded as a part of the *res gestae.* The defendant therefore takes nothing by these exceptions.

(3) The sixth exception relates to the following question to the Chief of Police: "Q. 12. Against whom?" The context shows that the witness had testified that Clara Eisinger, the prosecutrix, made a complaint to him. The answer to the question was: "Joseph Badnelley." "Q. 13. And in consequence of that, of the complaint, did you issue the complaint in this case? A. I did." We fail to see how the defendant was prejudiced thereby.

The seventh exception relates to the ruling out of the following question asked in examination of Martha Schreir, a witness for the defendant. "Did you then tell her that there were only three in the family?" The witness was mother-in-law of the defendant and had testified that she had employed the prosecutrix to work as a housemaid. In the cross-examination of the prosecutrix she was asked by the counsel for the defendant, as follows: "C. Q. 273—Was Mr. Schreir and Mrs. Schreir there when you made your arrangements about employment? A. Yes; also another girl in the store, too, and another girl who fixed hats. C. Q. 274. Was the man from the Employment Agency there also? A. Yes, he was also there. C. Q. 275. And did he hear the arrangements that you made there, that you were making for your employment? MR. CROSS—I don't know how all this is material. MR. NOLAN: It is important as showing whether two or three were employed there. MR. CROSS—That is of no consequence. MR. NOLAN: If you will permit me to inquire. It is of some consequence. BY THE COURT—If you claim that is material to your case I will allow the question to be asked. C. Q. 276 (BY MR. NOLAN) Was this man from the Employment Agency present when you made your arrangements with Mr. or Mrs. Schreir? A. Yes;

he heard everything, and at the conclusion he asked me if I want to stay, whether I want to stay, whether I will accept the position. He wanted to show me other places, bring me to other places. C. Q. 277. And he heard Mrs. Schreir tell you that all the people you would have to work for would be three people? A. Yes, she has told me,—I my husband, an old mother I had, and my daughter is there to visit only a few days." The court properly excluded the question and there is no validity in the exception.

The ninth, and last exception, relates to the refusal of the court to charge the jury as requested. The court had sufficiently instructed the jury in this behalf and the defendant was not entitled to a repetition of the charge in these particular terms.

The defendant's exceptions are therefore overruled and the case is remitted to the Superior Court in the county of Newport for sentence.

*William B. Greenough, Attorney-General, Harry P. Cross, Second Assistant Attorney-General,* for the State.

*Burdick & McLeod, Frank F. Nolan,* for defendant.