## STATE

v.

## Cornelius BREEN.

## No. 98–41–C.A.

Supreme Court of Rhode Island.

Feb. 26, 2001.

**52**

Aaron L. Weisman, Providence, for Plaintiff.

Paula Lynch Hardiman, Paula Rosin, Providence, for Defendant.

Present WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

The decisive issues in this case are whether the defendant, Cornelius Breen, should have been acquitted of stalking because the evidence was insufficient to trigger Rhode Island's stalking statute, and whether the fact and details of the defendant's prior conviction of stalking the same person were admissible to establish an element of the offense charged.

### Facts

At trial, the complainant in this case (complainant) testified that she met defendant in August 1986 at an Al–Anon[1] meet-

---

[1]. Al–Anon is an organization that helps families and friends of alcoholics recover from the effects of living with the problem drinking of a relative or friend. Its program of recovery is adapted from Alcoholics Anonymous.

ing that she attended for support in her marriage to an alcoholic husband, whom she later divorced. Initially, complainant and defendant were friends, but by 1990 they started a dating relationship that lasted approximately eighteen months. The complainant testified that the relationship ended because she was becoming fearful of defendant's displays of anger, describing his behavior as "very possessive and controlling." When in November 1991, complainant disclosed that she no longer wished to see him, defendant continued to call her, leave items in her mailbox, write her letters, and make unannounced visits to her home. Although complainant had requested that defendant no longer contact her, her parents, or her children, defendant in 1992 persisted by engaging in such conduct as attending complainant's divorce modification proceedings in Family Court, visiting her parents in Massachusetts, making phone calls to complainant, threatening to "make trouble" for her at her place of employment, and following complainant and her children on vacation at her parents' house. Upon his conviction of stalking, defendant was sentenced to one year probation starting December 23, 1992, and was ordered to have no contact with complainant.

On December 23, 1993, exactly one year after the probation was imposed, complainant attended an Al–Anon meeting with another friend, Raymond Riccio (Riccio). One of the eight or ten people present was defendant. After the meeting, complainant and Riccio went nearby for coffee, as did defendant and other Al–Anon members. Upon leaving the restaurant, complainant discovered two letters of poetry on the windshield of Riccio's car, written in what she recognized as defendant's handwriting. The complainant recounted that she was "terrified" to discover the letters "[b]ecause it was one year to the day of the end of his probation," and she felt that "he was waiting until the year was up, and then he was going to start again, which he did." In the months that followed, she received three more communications by mail from defendant, an unsigned Valentine's card in February 1994, an unsigned birthday card in the same month, addressed in defendant's handwriting, and a condolence card in March for the death of her grandmother, who had died several months earlier. The complainant described the effect of receiving these letters: "I've been so upset about it, I run my lights all night, I'm afraid for my children, I'm afraid for my parents, I'm afraid for my friends even." The defendant subsequently was arrested and charged with stalking pursuant to G.L.1956 § 11–59–2.

During the trial before a jury in May 1997, complainant was permitted to testify extensively about specific instances of defendant's conduct that had resulted in his previous conviction of stalking her. This testimony was the subject of defendant's motion *in limine* to exclude any evidence of his previous conviction and of his behavior towards complainant which led to his first conviction. The trial justice initially granted the motion in part, but the record is unclear on whether the fact of defendant's conviction or the specific instances of conduct would not be admissible. When the state's opening statement informed the jury of both the prior conviction and the conduct, defendant moved for a mistrial. The trial justice denied the motion and ruled that evidence of the earlier conviction and the conduct that led to it were "admissible to show what her mental state of mind was when she received the new contacts, * * * after expiration of the probation * * * [and] relevant on her state of mind why she was so terribly concerned." During direct examination of complainant, the trial justice cautioned the jury that "the prior contacts are being admitted solely for you to appraise what the state of mind, what effect did these new contacts, a year after the probation was imposed, have upon this witness." He gave a limiting instruction after admitting into evidence several documents that referred to defendant's previous conviction, for the purpose of authenticating defendant's handwriting

on the four most recent communications to complainant: "[T]hese documents * * * are relevant on the issue of the known signature of the defendant. That's the sole reason they have some relevance in this case."

Two of these documents now at issue on appeal also indicated that defendant had been charged with resisting arrest and violating a protective order. After initially objecting to the evidence, defendant agreed to the introduction of the documents because they also disclosed that he was found not guilty of the first charge and that the second charge was dismissed. After the state presented its case, defendant moved for judgment of acquittal and renewed the motion without presenting testimony. The motion was denied, and the jury found defendant guilty of stalking complainant. Additional facts will be discussed as required in the legal analysis of the issues raised.

**Procedural History**

After the same Superior Court trial justice as in the present case dismissed a different stalking case, ruling that § 11–59–2 was "facially ambiguous" and "constitutionally vague," *State v. Fonseca*, bench decision P3/94–2319A, a different Superior Court motion judge granted defendant's motion to dismiss this case in May 1995. The state appealed the dismissal of the instant case, and its motion to hold in abeyance its appeal of the dismissal in this case was granted, pending our review of the previous Superior Court dismissal in *Fonseca*.

This Court held in *State v. Fonseca*, 670 A.2d 1237 (R.I.1996), that the version of § 11–59–2 then in effect "was not so ambiguously worded as to render it unconstitutional," and we sustained the state's appeal and remanded that case to the Superior Court "with directions to reinstate the complaint against [Fonseca]

and for further proceedings in accordance with the statute as amended."[2] *Fonseca*, 670 A.2d at 1238 (citing *State v. Babbitt*, 457 A.2d 1049, 1054–55 (R.I.1983); *State v. Souza*, 456 A.2d 775, 781 (R.I.1983)).

In accordance with our holding in *Fonseca*, we sustained the state's appeal in the instant case and granted its motion for "reinstatement of the 'stalking' charge against this defendant and for remand of the matter to the Superior Court for further proceedings in light of that opinion." The defendant was charged under the then newly amended statute, and after a three-day jury trial in May 1997, defendant was found guilty of stalking, pursuant to § 11–59–2, as amended. The defendant filed a motion for a new trial that was denied, and the trial justice imposed sentence on defendant, after reviewing a presentence report and after affording defendant an opportunity to address the court. The defendant was sentenced to one year of incarceration, four months to serve, eight months suspended, and a probationary period of eight months to commence on release, with instruction to have no contact with complainant and to receive counseling in prison or after his release. Subsequently, defendant filed motions to reduce his sentence and to set bail pending the instant appeal, both of which were denied. The defendant has served his entire sentence.

The defendant has argued several issues on appeal: (1) the trial justice erred by denying defendant's motion for judgment of acquittal because his conduct did not amount to harassment as defined by the statute; (2) § 11–59–2 is void for vagueness and overbreadth; (3) evidence of specific acts by defendant that resulted in a previous conviction for stalking the same victim was erroneously admitted into evidence; and (4) certain documents introduced by the state for handwriting analysis were unduly prejudicial. Having con-

**2.** The amended statute eliminated the requirement of making a "credible threat" that intended to place the victim of stalking in rea-

sonable fear of death or great bodily injury, and it clarified which repeated acts would trigger the stalking statute.

sidered defendant's arguments, we deny his appeal and affirm the judgment of the Superior Court.

## Motion for Judgment of Acquittal

■ On July 21, 1992, the Legislature defined the criminal offense of stalking as specific kinds of repeated behavior directed at a particular person, such as following, harassing, or threatening.[3] While the first constitutional challenge of the statute in *Fonseca* was pending, the Legislature amended the statute. The defendant was charged under the then-existing version of the statute.

Section 11–59–1, as amended by P.L. 1995, ch. 7, § 1 provides:

"**Definitions.**—As used in this chapter:

(1) 'Course of conduct' means a pattern of conduct composed of a series of acts over a period of time, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of 'course of conduct.'

(2) 'Harasses' means a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses the person, and which serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, or be in fear of bodily injury."

Section 11–59–2(a), as amended by P.L. 1995, ch. 7, § 1 provides:

"**Stalking Prohibited.**—(a) Any person who: (i) harasses another person; or (ii) willfully, maliciously, and repeatedly follows another person with the intent to place that person in reasonable fear of bodily injury, is guilty of the crime of stalking, punishable by imprisonment for not more than one (1) year or by a fine of not more than one thousand dollars ($1,000), or both."

Section 11–59–2(b), as amended by P.L. 1995, ch. 184, § 1 provides:

"A second or subsequent conviction under subdivision (a) shall be deemed a felony punishable by imprisonment for not more than five (5) years, by a fine of not more than ten thousand ($10,000) or both."

On appeal, defendant's first claim of error was that his motion for judgment of acquittal should have been granted because the conduct here—sending two poems and three cards—constituted insufficient evidence to establish the charge of stalking under § 11–59–2. He suggested further that the communications served a "legitimate purpose," which, if present, disqualified the conduct from the meaning of harassment under the statute.

■ It is well established in this jurisdiction that "[i]n considering a motion for judgment of acquittal, a trial justice must view the evidence in the light most favorable to the state, without weighing the evidence or assessing the credibility of the witnesses, in fact giving full credibility to the state's witnesses, and draw therefrom all reasonable inferences consistent with guilt. * * * If the totality of the evidence so viewed and the inferences so drawn would justify a reasonable juror in finding a defendant guilty beyond a reasonable doubt, the motion for judgment of acquittal must be denied. * * * In reviewing a trial justice's denial of such a motion, this Court applies the same standard as the tribunal below." *State v. Snow*, 670 A.2d 239, 243 (R.I.1996).

Here, the trial justice agreed that "[w]ithout the prior contact * * * these four communications * * * would not, as a matter of law, have constituted harassment." However, once the first episode of stalking had been recounted to the jury for the purpose of reflecting on complainant's state of mind, the timing and circumstances of these new communications be-

---

3. For a compilation and analysis of state stalking cases, *see* Majorie A. Cancr, Annota-tion, *Validity, Construction, and Application of Stalking Statutes*, 29 A.L.R.5th 487 (1995).

came clear. Two unsigned poems of an amorous nature were left on a car which was transporting complainant the day after defendant's one-year probationary period had ended. The complainant stated that she feared renewed contact by defendant at that time, and indeed, he sent her three additional communications: an unsigned Valentine's card, an unsigned birthday card addressed to "H–B Day," and a condolence card several months after her grandmother's death, signed "Love Forever Neal." Each envelope featured a "LOVE" stamp with a heart motif.

The complainant described the physical effects she suffered as a result of defendant's actions: "I have headaches, I run my lights all night, I watch behind me. When I leave work at night * * * I * * * look behind me. I'm just—I'm not at peace. I just feel that he's always around." Given the history of the relationship between defendant and complainant, we agree that the new series of specific instances of conduct by defendant and the impact they had on complainant constituted sufficient evidence for the jury to find the elements of harassment beyond a reasonable doubt under § 11–59–2.

In light of the substantial evidence that defendant was amply aware that his continued communications were unwelcome, we believe that the absence of a precise statutory definition of "legitimate purpose" is not fatal to the state's case, inasmuch as defendant was adequately informed of what acts constituted prohibited behavior.

The defendant further argued that he did not "willfully, maliciously, and repeatedly follow[ ] another person with the intent to place that person in reasonable fear of bodily injury" because there was "absolutely no evidence that [complainant] was in fear of bodily injury." In fact, on cross-examination, complainant agreed that the cards did not contain any threatening content. But, defendant also concedes that the "[s]tate's case rests wholly on a determination of whether [defendant] 'harassed' [complainant] within the mean-

ing of the statute." Pursuant to § 11–59–2, either harassing another person *or* willfully, maliciously, and repeatedly following another person with the intent to place that person in reasonable fear of bodily injury is sufficient to support a conviction of the crime of stalking. Because the language in § 11–59–1 defining harassment is phrased in the alternative as well, the fact that complainant was not in fear of bodily injury is irrelevant, if the conduct by defendant would cause a reasonable person to suffer substantial emotional distress. A thorough review of the record revealed that in his denial of the motion for judgment of acquittal, the trial justice rested his decision on the amended definition of harassment in § 11–59–1. The justice stated that the present case was not a matter of "maliciously, willfully, repeatedly following someone, that must cause a person to be put in fear of bodily injury" but rather that it was a case involving a course of conduct "that would cause a reasonable person to suffer substantial emotional distress or be in fear of bodily harm." Noting that there had been threats and that complainant was in fear, the trial justice phrased the decisive issues as whether "those four contacts made by this defendant in a light most favorable to the State [would] seriously alarm, annoy, or harass the person" and whether "this course of conduct [would] cause a reasonable person to suffer substantial emotional distress," and he answered them in the affirmative. We agree with the trial justice that the evidence, when viewed in the light most favorable to the state, was sufficient to warrant a denial of the motion for judgment of acquittal.

## Constitutionality of § 11–59–2

When defendant successfully sought pre-trial to have the complaint against him dismissed, he had based his argument on the Superior Court decision in *Fonseca*, which held that the then-existing version of § 11–59–2, under which defendant initially was charged, was constitu-

tionally vague.[4] The defendant suggested that "[t]he lack of 'fair notice' is at the heart of [the trial justice's] decision to dismiss *State v. Fonseca.*" Specifically, the thrust of his argument was that in the phrase "repeatedly follows or harasses," " 'repeatedly' as a modifier * * * create[d] uncertainty as to what constitutes proscribed conduct under 11–59–2." The trial justice agreed with defendant's argument that the wording of § 11–59–2 created a "patent confusion on the face of this complaint," and he dismissed the charges. On February 16, 1995, the Legislature amended § 11–59–2, and the language on which defendant had based his challenge was deleted. The charges against defendant were reinstated in accordance with the amended statute, under the authority of *Fonseca.*

On appeal, defendant raised several other issues in an attempt to attack the constitutionality of the newly amended statute under which he was charged. For the first time on appeal, defendant claimed that the term "legitimate purpose" was not defined, that the statute omitted an intent requirement, and that the statute restricted his free speech. Neither in his memorandum nor in the oral argument supporting his motion to dismiss did defendant advance those theories at trial. Moreover, the arguments made at trial were based on the pre-amended statute, and our thorough review of the record revealed that no objection was made at trial to the constitutionality of the amended statute under which defendant was eventually charged and convicted.

■■ "It is axiomatic that 'this [C]ourt will not consider an issue raised for the first time on appeal that was not properly presented before the trial court.' " *State v. Saluter,* 715 A.2d 1250, 1258 (R.I.1998) (quoting *State v. Gatone,* 698 A.2d 230, 242

(R.I.1997)). Although we have recognized an exception to this raise-or-waive rule when "basic constitutional rights are concerned," *State v. Mastracchio,* 672 A.2d 438, 446 (R.I.1996), the alleged error must be more than harmless, and the exception must implicate an issue of constitutional dimension derived from a novel rule of law that could not reasonably have been known to counsel at the time of trial. *State v. Gomes,* 690 A.2d 310, 319 (R.I.1997). Because defendant did not identify any of the narrow exceptions to the raise-or-waive rule as applicable to his claim, we hold that his objection was waived.

### Admission of Specific Conduct Leading to a Previous Conviction

■ The defendant suggested on appeal that the details of conduct resulting in his previous conviction of stalking complainant were erroneously admitted because the prejudicial effect of the testimony outweighed its probative value. Recognizing that the trial justice admitted the evidence for the sole purpose of demonstrating complainant's state of mind when she received the new communications, defendant argued that complainant's state of mind was not an element of the offense. Instead, he proposed that the subjective state of mind of complainant was wholly irrelevant because the prohibited conduct had to cause a reasonable person to suffer substantial emotional distress, and hence the appropriate test was an objective standard.

■ Under Rule 404(b) of the Rhode Island Rules of Evidence "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." The rule is "designed to prohibit the introduction of evidence that is only relevant to show that

---

4. When defendant initially was charged and at the time of his post-probation conduct, the challenged section of G.L.1956 § 11–59–2, as amended by P.L.1992, ch. 382, § 1 provided:

"(a) Any person who willfully, maliciously, and repeatedly follows or harasses another

person and who makes a credible threat with the intent to place that person in reasonable fear of death or great bodily injury is guilty of the crime of stalking * * *."

the defendant is a bad person and, therefore, likely to have committed the offense with which he is charged." *State v. Clark*, 754 A.2d 73, 79 (R.I.2000). We have held, however, that "evidence of the commission of another crime that is relevant to the proof of the crime in issue is not prohibited by Rule 404(b) or by the common law principles that preceded it." *Clark*, 754 A.2d at 79. Therefore, such evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, [or] identity * * *." *State v. Robertson*, 740 A.2d 330, 335 (R.I.1999) (quoting Rule 404(b)). The decision on whether evidence of other crimes is relevant to a permissible purpose is left to the sound discretion of the trial justice, and "on appeal we shall only disturb his or her decision when it constitutes an abuse of discretion," *State v. Gabriau*, 696 A.2d 290, 294 (R.I.1997), and the evidence was "both prejudicial and irrelevant." *State v. Martinez*, 651 A.2d 1189, 1194 (R.I.1994).

■■■■■ To prove the elements of stalking based on harassment, the state carried the burden of proving beyond a reasonable doubt that complainant was seriously alarmed, annoyed, or bothered and that the course of conduct was such that it would cause a reasonable person to suffer substantial emotional distress. Testimony by complainant describing her reaction to the new series of contacts immediately after defendant's probationary period had ended demonstrated that the subjective part of this test had been met. Several examples will suffice to illustrate that separating the "reasonable person" standard entirely from an analysis of the surrounding circumstances or the person's position would offend established legal principles. For instance, the rationale for admitting into evidence a statement against one's interest is that "a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true." *State v. Firth*, 708 A.2d 526, 531 (R.I.1998). Simi-

larly, in the context of informed consent in a medical malpractice case, the question of materiality depends on the significance that a reasonable patient would attach to the disclosed risk when deciding whether to submit to treatment. *Lauro v. Knowles*, 739 A.2d 1183, 1186 (R.I.1999) (per curiam). When determining whether a person is entitled to *Miranda* warnings, the analysis of "whether a person is subjected to restraints comparable to those associated with a formal arrest turns on how a reasonable person in the suspect's position would understand the situation." *State v. Hobson*, 648 A.2d 1369, 1372 (R.I. 1994) (quoting *State v. Caruolo*, 524 A.2d 575, 579 (R.I.1987)). And, finally, in deciding the existence of a contract, we examine the expectation of "a reasonable person in [the contracting party's] position," in light of the prior course of dealing and past history between the parties. *Kenney Manufacturing Co. v. Starkweather & Shepley, Inc.*, 643 A.2d 203, 209 (R.I.1994).

Because the Legislature enacted the stalking statute relatively recently, we have not yet interpreted the chapter, apart from the constitutional challenge in *Fonseca*. The case law of other jurisdictions, although not determinative, is instructive therefore in addressing the issue. For instance, in assessing whether a person had suffered emotional distress or reasonably apprehended bodily injury, the Supreme Court of Montana applied the standard of "a reasonable person under similar circumstances." *State v. McCarthy*, 294 Mont. 270, 980 P.2d 629, 633 (1999). The Court supported a finding by the trial jury in *McCarthy* that "given the protracted and tumultuous relationship between these two individuals, [complainant's] distress at receiving [defendant's] letters was reasonable * * *." *Id.*

The trial justice in the case at bar allowed the evidence of defendant's previous conduct to be admitted for the limited purpose of showing that this conduct would cause a reasonable person in com-

plainant's position to suffer substantial emotional distress. He instructed the jury during complainant's direct examination that "the only relevance that events which took place prior to December of '92 have in this case relate[s] to her state of mind in December of '93 and [at subsequent contacts]." The trial justice explained and instructed the jury several times that defendant was not on trial for those events, and he could not be tried for them again. He continued, "[h]er state of mind is an element that the State must prove beyond a reasonable doubt. That's the only relevance." At the close of trial, the trial justice instructed the jury:

"The prior activity between the complaining witness and the defendant is material and relevant only on the issue of her frame of mind * * *. The fact that he had been charged and arrested for a prior stalking charge * * * is not to be considered by you as evidence that he acted in conformity with that prior charge."

It is our opinion that to establish the "reasonable person" objective element in the Rhode Island stalking statute, it is necessary to understand the circumstances under which the contacts occurred. A prominent characteristic of the offense is the likelihood that a defendant will repeat the same pattern of conduct with a particular victim. The Legislature responded to this fact by elevating a second conviction to the level of a felony. The complainant had availed herself of all legal measures to discourage defendant from further contact, and it was understandably distressing to her to receive new communications the day after defendant's probationary period ended. Although the cards and letters were not inherently threatening, they did demonstrate that defendant would continue to contact complainant regardless of her express wishes that he not continue, explicit prohibitions against his behavior, and a previous conviction for stalking the same individual. The evidence of defendant's prior conviction of stalking complainant

and the details of his conduct were entirely relevant to prove an element of the offense, and hence, we are of the opinion that the trial justice did not abuse his discretion in admitting such evidence.

### Admission of Documents for Handwriting Analysis

▮▮▮▮ In his final objection, defendant contended that the introduction of certain documents for the purpose of authenticating defendant's handwriting was error because they were prejudicial and irrelevant. It is well established that "[d]eterminations of the relevancy of evidence offered at trial are within the sound discretion of the trial justice. * * * In addition, '[t]he ultimate determination [under Rule 403] of the effect of * * * evidence is within the trial justice's discretion.' * * * Rulings on the admissibility of evidence on relevance grounds will not be considered reversible error unless we find that the trial justice abused his discretion." *State v. Marini*, 638 A.2d 507, 516 (R.I.1994).

The state offered several documents relating to the 1992 complaint as comparison handwriting samples, and defendant suggested that the samples embodied "negative connotations * * * [that] outweighe[d] any probative value that would be helpful in analyzing the defendant's handwriting." Although it appears that defendant eventually acquiesced to the introduction of the 1992 complaint and fingerprint card given that these documents also informed the jury that two of the three charges had been resolved in his favor, we believe that the admission into evidence of these official documents, in addition to a vehicle release and a bail and recognizance form, was unnecessary and unfairly prejudicial to defendant. Numerous other handwriting comparison samples were available that did not reintroduce to the jury the fact of defendant's previous conviction. Although the trial justice gave a curative instruction at the time the evidence was presented— "All of these documents * * * are relevant on the issue of the known signature of the

defendant. That's the sole reason they have some relevance in this case"—the probative value of these documents was "substantially outweighed by the danger of unfair prejudice," and they should not have been admitted. R.I. R. Evid. 403.[5]

 Nevertheless, "[t]his Court has generally held that when objectionable evidence also has come before the jury through other avenues, the improper admission of the evidence was not prejudicial." *Robertson*, 740 A.2d at 336. *See also State v. Dinagen*, 639 A.2d 1353, 1358 (R.I.1994) (holding that mug shots that were impermissibly admitted did not prejudice the defendant because evidence of prior convictions came before the jury in other ways); *State v. Carraturo*, 112 R.I. 179, 189, 308 A.2d 828, 833 (1973) (concluding that certain questions were not prejudicial given that two witnesses earlier had testified about the same information); *State v. Kennedy*, 84 R.I. 107, 111, 121 A.2d 647, 650 (1956) (holding that cross-examination was not prejudicial when defendant himself had introduced evidence of past conduct).

In the case before us, the jury had already been informed of the defendant's previous conviction and had been repeatedly cautioned to limit its consideration of that fact to determining the reasonableness of complainant's state of mind. Accordingly, we conclude that "the jury would have reached the same verdict if the evidence had not been improperly admitted," *State v. Burke*, 427 A.2d 1302, 1304 (R.I.1981), and therefore, that the admission of the documents, although error, was harmless beyond a reasonable doubt.

### Conclusion

In conclusion, sufficient evidence existed to support a judgment of conviction for stalking. In addition, the trial justice did not abuse his discretion in admitting evidence of the defendant's previous conviction. The admission of documents relating to the conviction, although erroneous, was harmless error. Consequently, we deny and dismiss the appeal and affirm the judgment of the Superior Court, to which we return the papers in the case.

---

5. Rule 403 of the Rhode Island Rules of Evidence provides:

"**[Exclusion] of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."