**Supreme Court**

No. 2014-145-C.A.

(P2/12-179A)

State                :

v.                :

Francis Kolsoi.        :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| State | : |
| | |
| v. | : |
| | |
| Francis Kolsoi. | : |

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.** Following a jury-waived trial before a justice of the Superior Court, the defendant, Francis Kolsoi, was convicted of five counts of stalking in violation of G.L. 1956 § 11-59-2. The trial justice imposed a sentence of probation on each count to run concurrently. The defendant timely appealed his conviction to this Court. The matter came before us on October 7, 2015, under an order directing the parties to appear and show cause why the issues raised by this appeal should not summarily be decided. After considering counsels' oral and written arguments and examining the record, we are of the opinion that cause has not been shown and that this case can be decided without further briefing or argument. For the reasons given below, we affirm the judgment of the Superior Court.

## Facts and Travel

In the fall of 2011, as part of her morning routine, Allison, a student at Lincoln High School, would pick up her friends Brianna, Chloe, Danielle, and Emily on her way to school.[1] En route, the girls usually would stop at a local Dunkin' Donuts for coffee. On four days in

---

[1] We have employed pseudonyms to protect the privacy of the complainants.

September and October 2011, the girls and defendant crossed paths at Dunkin' Donuts. Allison and Brianna testified that on those four occasions, Kolsoi engaged in disturbing behavior that was directed at them, including looking down their friend's shirt, staring at them, appearing to photograph them with his cell phone, and following them in his vehicle after they left the coffee shop. Footage from the shop's security cameras, which was admitted into evidence, captured most of what transpired inside the store. Also, on more than one occasion, Kolsoi tailgated the girls' vehicle, flashed his car lights at them, or followed them to the school parking lot.

Allison testified that the group first encountered defendant on September 23, 2011, when defendant opened the coffee shop's door for them as he was entering and they were leaving. As they passed through the door, Brianna observed him look down the front of Danielle's shirt. The defendant did not go into the shop, but instead stood in front of Allison's car, a black Volvo, "and just stared at [them] getting into the car." According to Allison, Kolsoi then hurried to his car and "drove very fast to catch up" to them, almost striking her car in the process. Kolsoi continued to follow them very closely, switching lanes when Allison did, and flashing his lights. She testified that she was afraid that he might be trying to collide with her car or, even worse, planning to abduct one of them.

On September 30, 2011, when Allison and her friends again visited Dunkin' Donuts, Brianna noticed that Kolsoi was already inside the shop. While they waited in line to be served, Brianna alerted the group to his presence and Allison noticed that Kolsoi was holding his cell phone in a manner that suggested that he was taking a video or pictures of her and her friends. Allison immediately said, "Let's go" to her companions and they all ran out of the shop, except for Brianna, who stayed behind waiting for her order. Allison said that, when she returned to get her friend, Brianna was standing in line, looking frightened and holding on to an acquaintance.

Brianna also testified; she said that she saw Kolsoi sitting at a table, pointing his phone at the girls. She also concluded that he was videotaping or taking pictures of them. She said that she held on to a friend in line because she was afraid that Kolsoi would grab her. When they returned to Allison's car, they noticed that Kolsoi was already in his vehicle, relaxing with his hands behind his head, staring at them. This time, according to Allison, Kolsoi followed them all the way to school and "drove very slowly past [them] and was smiling and staring at [them] as [they] were standing in front of [her] car." Brianna also said that, as he drove by the school parking lot, Kolsoi was looking at them and smiling, which caused her to feel "[c]reeped out." Upset by what had just occurred, for a second time, Allison memorized his license plate number and reported both incidents to the school's assistant principal.

On October 5, 2011, the girls were in the Dunkin' Donuts when they looked outside and noticed Kolsoi in his car, parked near Allison's black Volvo. Fearing for their safety, the girls called the police and waited for a police car to arrive before they returned to their car. Although Kolsoi chose not to follow them that day, a security video showed Kolsoi's car leaving the parking lot behind the police car, shortly after the girls left.

On October 6, 2011, the girls again arrived at Dunkin' Donuts before school. However, this time the Lincoln Police Department had informed them that plainclothes police officers would be inside the building to observe Kolsoi. The students purchased their items while Kolsoi sat in his car in the parking lot. After they backed out of their parking space and left the premises, Kolsoi again began to trail them. Allison said that, although he was two car lengths behind the girls when they left the lot, Kolsoi soon caught up to them and pulled up beside them on the road so that he could look inside their car. This last incident led to Kolsoi's arrest on October 12, 2011.

In an information dated January 19, 2012, the state charged defendant with five counts of felony stalking. The case came to trial in the Superior Court later that year. At the close of the state's evidence, Kolsoi moved to dismiss the charges against him, pursuant to Rule 29(a) of the Superior Court Rules of Criminal Procedure. The trial justice reserved her decision on the motion until the close of all the evidence. Kolsoi then testified in his own defense, making an effort to explain his actions for each encounter with the young complainants. Kolsoi maintained that each situation was coincidental and he denied that he was aware of the girls for more than an instant when their paths crossed. He said that he was at Dunkin' Donuts on those occasions for innocuous reasons, in particular, to connect with someone for part-time work. He testified that he drove closely behind the girls and flashed his lights because he was frustrated and rushing to get to work. With respect to the complainants' contention that he appeared to be photographing them with his cell phone, he said that he was holding his phone in a way to avoid sun glare as he looked for a message.

The defendant said he went to Dunkin' Donuts on September 23, 2011, but realized when he looked at the menu board that he did not have enough money to purchase anything and left, rushing to get to a job in Framingham, Massachusetts. He said that he recalled seeing the girls, but asserted that they did not stand out in his mind and he emphatically denied that he had stopped at their car to stare at them. He did admit to following their car very closely and to flashing his lights, but explained that he did that to more than one vehicle as he hurried to get to his job.

Kolsoi offered that on September 30, 2011, he went to Dunkin' Donuts expecting to meet someone about a job. As he viewed the security footage from that day, which had been admitted as a full exhibit, he explained that he was looking at his phone and looking up periodically to see

if the person he was expecting had arrived and that he was sitting in a particular chair to avoid sun glare.  He denied that he had recognized the girls.  He did concede that he left the Dunkin' Donuts right after the girls, but said he was not aware of them.  In justifying his presence near the high school, Kolsoi said he was driving to a rental apartment that he owned to fix the toilet and that his route coincidentally brought him by the high school.[2]  He said he did not see the girls in the parking lot, but that he did notice the black Volvo.  He maintained, however, that he did not pay much attention to it.  When asked to explain why he drove so slowly by the school, Kolsoi testified that he slowed down because he did not want to get a speeding ticket.

With respect to the incident that occurred on October 5, 2011, defendant said that he went to Dunkin' Donuts, waited in his car for a phone call about a job, and checked his phone for messages.  He said that when he did not receive a call, he left for home.  He denied that he had seen the girls that day, saying, "I might have, but I wasn't paying attention to them."  When he left the parking lot, there was a police car ahead of him; he said that he "might" have seen the black Volvo, explaining, "I think I was already then conscious of the black Volvo because of the 23rd when they blocked me, so I knew about the black Volvo and a bunch of kids."

Finally, he said he went to Dunkin' Donuts on October 6, 2011, after working a night shift because he thought someone might be contacting him about employment, so he waited for a phone call.  He said that he did not recall having seen the girls on that day but, after viewing the security footage, he said, "I might have seen them but not conscious [sic] that these are the girls or any girls."  He denied that he followed the girls out of the parking lot that day but said, "I

---

[2] Kolsoi's tenant, Jacob Langley, said that Kolsoi's toolbox had been left by the front door to his apartment on September 30, 2011.  He also said that Kolsoi would, on occasion, leave the toolbox there to let him know that he had stopped by the rental apartment to make requested repairs.

might have seen [a black Volvo], but it's like I was conscious of the black Volvo but I wasn't paying attention, I was minding my business." Kolsoi went on to say that he was completely shocked and confused when he was arrested on October 12, 2011.

At the close of all the evidence, Kolsoi renewed his oral motion to dismiss, and the trial justice again reserved judgment. Then, on December 6, 2012, without having ruled on the motion to dismiss, the trial justice delivered her decision from the bench finding Kolsoi guilty of five counts of stalking. In support of the oral motions that he made during trial, Kolsoi also filed a motion to dismiss on January 8, 2013. On March 22, 2013, the trial justice heard Kolsoi on the motion to dismiss. Although a transcript of that hearing has not been provided to this Court, the trial justice summarized defendant's arguments when she delivered her decision from the bench on April 26, 2013. It is apparent that defendant argued that the state had not proven beyond a reasonable doubt that his actions were willful or malicious, that there was no evidence that he was formally notified that his activities were unwelcome, and that there was insufficient evidence on counts 3, 4, and 5 because there was no testimony from the complainants named in those counts. That motion was denied and defendant timely appealed.

On appeal before this Court, Kolsoi argues that: (1) the trial justice erred when she denied his motion to dismiss because he was "without knowledge that his actions were disturbing;" (2) the trial justice erred when she denied his motion to dismiss counts three through five because the state failed to call three of the five complainants to testify; (3) the trial justice erred when she denied his motion to dismiss because the state failed to prove that the complainants were in "reasonable fear of bodily injury;" (4) § 11-59-2 is unconstitutionally vague; and (5) that the failure to call three of the complainants violated his rights under the Sixth Amendment's Confrontation Clause and article 1, section 10 of the Rhode Island Constitution.

- 6 -

**Analysis**

We begin by noting that defendant waived his right to a jury trial and chose to be tried by a justice sitting without a jury. Therefore, to challenge the legal sufficiency of the evidence, the defendant must file a motion to dismiss under the provisions of Rule 29(a). See State v. Silvia, 798 A.2d 419, 424 (R.I. 2002). When ruling on a motion to dismiss in a jury-waived criminal trial, the trial justice acts as an independent factfinder. See State v. Albanese, 970 A.2d 1215, 1220 (R.I. 2009). Sitting in that role, the trial justice should:

> "weigh and evaluate the trial evidence, pass upon the credibility of the trial witnesses, and engage in the inferential process, impartially, not being required to view the inferences in favor of the nonmoving party, and against the moving party. After so doing, if the trial justice in a criminal case setting concludes that the trial evidence is sufficient to establish guilt beyond a reasonable doubt, he or she denies the defendant's motion to dismiss and, if both sides have rested, enters decision and judgment of conviction thereon. If the evidence is not so sufficient, he or she grants the motion and dismisses the case." State v. McKone, 673 A.2d 1068, 1072–73 (R.I. 1996).

It is also significant that "[i]n a jury-waived criminal proceeding, this Court gives deference to a trial justice's finding[s] of facts." State v. Adewumi, 966 A.2d 1217, 1221–22 (R.I. 2009) (quoting State v. Forand, 958 A.2d 134, 138 (R.I. 2008)). Moreover, when we review these "determinations of credibility and findings of fact by a trial justice sitting without a jury, this Court will not disturb the trial justice's findings unless they are clearly wrong or the trial justice misconceived or overlooked material evidence on a controlling issue." Id. at 1222 (quoting State v. LaCroix, 911 A.2d 674, 679 (R.I. 2006)).

**1**

**Prior Knowledge**

First, defendant argues that his motion to dismiss should have been granted because he was "without knowledge that his actions were disturbing." He argues that, in the absence of

evidence that he approached the complainants, contacted them directly, or knew that his actions were disturbing or unwanted, his case should have been dismissed under the provisions of Rule 29. To buttress his argument, defendant cites to our previous stalking cases, including State v. Stierhoff, 879 A.2d 425 (R.I. 2005); State v. Breen, 767 A.2d 50 (R.I. 2001); and State v. Grayhurst, 852 A.2d 491 (R.I. 2004). In Stierhoff, 879 A.2d at 428, not only the complainant, but others as well, put the defendant on notice that his attentions were unwanted and unwelcome before any criminal charges were brought against him. Likewise, in Breen, 767 A.2d at 52-53, the defendant had been previously convicted of stalking the complainant and had been sentenced to one year of probation and subjected to a no-contact order. But shortly after his probation ended, he began to harass the complainant again. Id. at 53. Finally, in Grayhurst, 852 A.2d at 499-500, the complainant had sought and had been granted two restraining orders against the defendant before the defendant was later charged with stalking.

It is our opinion that these cases are not helpful to defendant. In our view, defendant misconstrues not only the holdings of these cases but also the language of § 11-59-2. Although it is true that each of the cited cases involved defendants who previously had been notified, at least informally, that their contacts with the complainants were unwelcome, there is utterly no foundation to support an argument that we created a hard-and-fast rule that notice must be given to a defendant before criminal stalking charges are justified. Indeed, we foreclosed that precise argument in Stierhoff, 879 A.2d at 436, where we said that "there is nothing in the language of § 11-59-2 to suggest that a criminal defendant must be first served with any such type of official warning before his alarming, annoying, or bothersome conduct falls within the ambit of the statute." It is significant that the statute prohibits "willfully, maliciously, and repeatedly follow[ing] another person with the intent to place that person in reasonable fear of bodily injury

- 8 -

* * *." Section 11-59-2(a)(2) (emphasis added). Although the word "following" is not defined in the text of the statute, it has been judicially defined elsewhere. For instance, Connecticut construes the term "following" to require

> "that any following be willful * * * the following must have a predatory thrust to it. [It] does not encompass following that is aimless, unintentional, accidental or undertaken for a lawful purpose. Of course, following implies proximity in space as well as time. Whether someone has deliberately maintained sufficient visual or physical proximity with another person, uninterrupted, over a substantial enough period of time to constitute following will depend upon a variety of differing factors in each case. These are appropriate issues for the trier of fact to decide[.] " State v. Russell, 922 A.2d 191, 203 (Conn. App. Ct. 2007).

Based on the evidence presented at trial, the trial justice found that defendant's "following" did menace and frighten the complainants, and that his testimony was merely "fabrication and justification" for the threatening behavior towards the girls. The defendant's repeated actions over the course of four different days cannot be cast as mere coincidence. On each day, he placed himself at Dunkin' Donuts so that he could see the girls, he arrived at the same time, he clearly knew the car in which they traveled, he was observed peering in the windows of the vehicle, he never purchased anything at the coffee shop, and he used his cell phone camera to intimidate the girls by indicating, or at least leading them to believe, that he was photographing them. Because § 11-59-2 neither imputes a requirement that the defendant be notified his actions are disturbing nor requires direct contact with a complainant, we discern no error.

**2**

**Failure to Call Three of the Five Complainants to Testify**

Second, defendant contends that the state failed to prove that three of the girls were in reasonable fear because the state did not call them to testify. We do not agree.

The trial justice rejected defendant's argument that testimony by Chloe, Danielle, and Emily was necessary to establish that those complainants were in "reasonable fear of bodily injury." Rather, she found that his intent regarding all five complainants was evident because the complainants were traveling in the same group. Based on the state's assertion that the other three complainants would testify to the same facts as Allison and Brianna, the trial justice found that their testimony would have been cumulative and, therefore, unnecessary. "Cumulative evidence" is evidence that "tend[s] to prove the same point to which other evidence has been offered." State v. Lynch, 854 A.2d 1022, 1032 (R.I. 2004) (quoting State v. Coleman, 478 N.W.2d 349, 358 (Neb. 1992)). "[T]o qualify as 'cumulative,' the evidence in question need not be introduced only after other evidence tending to prove the same point already has been admitted. Rather, the test is a retrospective one, administered at the close of all the evidence * * *." Id. After reviewing the record, we agree that the testimony of the remaining girls would have been cumulative in light of Allison's and Brianna's testimony and would have added very little to the information the trial justice received in the course of trial.

Indeed, it is our opinion that the testimony of the remaining complainants was not necessary. We do not agree with defendant's argument that § 11-59-2 creates a subjective standard that requires that a victim actually be in reasonable fear of bodily injury. Section 11-59-2(a) defines the essential element of the crime in objective terms—whether the fear of bodily injury is "reasonable"—and the testimony of the three complainants was not necessary to establish it. Simply put, the complainant's subjective fear is irrelevant: the statute requires only that the defendant intend to place another person "in reasonable fear of bodily injury" by "harass[ing]" or "willfully, maliciously, and repeatedly follow[ing]" that person. Id. (emphasis added).

- 10 -

It has not been disputed that the same girls traveled together and that defendant's actions were directed toward the entire group. The girls arrived at Dunkin' Donuts in one car and entered and left together as a group. The testimony of Allison and Brianna, together with the surveillance footage, was sufficient evidence for the trial justice to find that defendant directed his actions towards all five complainants with the same intent to place all of them in a reasonable fear of bodily injury. The trial justice found that the surveillance video was "worth a thousand words" in establishing that defendant repeatedly correlated his movements with those of the group on at least four occasions over a span of two weeks. She found that defendant "trailed them in his car," flashed his lights, and drove in a "frantic and menacing manner around" them. She found that he "placed himself" at Dunkin' Donuts at the same time and smiled at all of them in a "creepy" manner, frightening them. She also found that defendant "made unwelcome gestures towards the girls in public," including aiming his camera at them, and then following them, smiling, "in the midst of a clearly unwelcome pursuit." We agree with the trial justice that all this evidence is sufficient to prove beyond a reasonable doubt that defendant undertook these actions for the purpose of putting all five girls in reasonable fear of bodily injury.

**3**

**The Remaining Arguments on Appeal**

The defendant argues that the trial justice erred when she denied his motion to dismiss because the state failed to prove that the two complainants who did testify were in "reasonable fear of bodily injury." Specifically, defendant points to Allison's and Brianna's testimony in which they said, somewhat defiantly, that they would continue to go to Dunkin' Donuts despite defendant's behavior. However, nowhere in the record is it revealed that defendant raised this argument before the trial justice.

Likewise, to the extent that the defendant challenges § 11-59-2 as unconstitutionally vague and contends that his constitutional right to confrontation has been violated, those issues are also not properly before us. A review of the record clearly demonstrates that the defendant did not raise those arguments at any time before the trial justice, including at the post-trial hearings on his motions to dismiss. At oral argument, the defendant's appellate counsel candidly conceded this point. By failing to raise those arguments, the defendant denied the trial justice the opportunity to rule on these issues, and, for that reason, he cannot assert them now. See Thornley v. Community College of Rhode Island, 107 A.3d 296, 302 (R.I. 2014). This Court "will not entertain on appeal an issue that the aggrieved party did not specifically raise before the trial court." Town of Richmond v. Wawaloam Reservation, Inc., 850 A.2d 924, 930 (R.I. 2004).

## Conclusion

We affirm the judgment of conviction. The record of this case shall be returned to the Superior Court.


**TITLE OF CASE:**     State v. Francis Kolsoi.

**CASE NO:**     No. 2014-145-C.A.
(P2/12-179A)

**COURT:**     Supreme Court

**DATE OPINION FILED:**     December 8, 2015

**JUSTICES:**     Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**     Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:**     Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Sarah Taft-Carter

**ATTORNEYS ON APPEAL:**

For State:   Aaron L. Weisman
Department of Attorney General

For Defendant:  Mark L. Smith, Esq.