STATE

v.

Craig CARDOZA.

No. 93–158–C.A.

Supreme Court of Rhode Island.

Nov. 15, 1994.

Jeffrey Pine, Atty. Gen., Andrew Berg, Sp. Asst. Atty. Gen., Aaron Weisman, Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Janice Weisfeld, and Paula Rosin, Asst. Public Defenders, for defendant.

## OPINION

SHEA, Justice.

This matter is before the Supreme Court on appeal by the defendant, Craig Cardoza, from a conviction, following a jury trial in Superior Court, of four counts of first-degree child molestation. The defendant alleges that his right to a fair trial was violated as a result of other-crimes evidence admitted and that the trial justice erred in denying his motion for a new trial. For the reasons set forth below, we affirm the conviction.

On October 11, 1990, defendant was charged by criminal indictment No. P1/90–3536A on four counts of first-degree child molestation upon the person of seven-year-old Albert[1] (Albert or victim) in violation of G.L.1956 (1981 Reenactment) § 11–37–8.1, as amended by P.L.1988, ch. 219, § 1. In addition to the four counts of first-degree child molestation, defendant was also charged by indictment with two counts of second-degree child molestation on the person of Albert's sister, Abigail[2], in violation of G.L.1956 (1981 Reenactment) § 11–37–8.3, as amended by P.L.1988, ch. 219, § 1. This statement of the facts will be limited to the circumstances that relate only to the convictions of first-degree child molestation as defendant was acquitted by a jury of the two second-degree child-molestation charges.

In 1985 defendant and his family moved into a home in Pawtucket directly across the street from the victim and his family.

Albert's sordid experience began on his seventh birthday, December 10, 1988. On that day defendant, who was then seventeen years old, invited Albert over to his house under the guise of viewing picture books of coyotes, Albert's favorite animal. Once they were alone in the house, defendant retrieved a pornographic magazine from under his bedroom mattress and displayed the pictures of naked men and women to Albert. On this same occasion defendant had Albert pull down his pants to his knees, at which point defendant pressed his penis against Albert's buttocks. This initial incident was the prelude to a number of sexual assaults to be perpetrated by defendant on Albert over a considerable period of time, until close to the time of defendant's arrest in March of 1990.

Albert was able to describe vividly many instances of both anal and oral sexual assault committed against his person in the isolation of defendant's home. The acts were described in graphic detail by Albert and included a second instance of penetration of Albert's anus by defendant's penis and penetration of defendant's anus by Albert at defendant's direction; on another occasion defendant had Albert touch his groin, and on a fifth occasion, defendant with his pants removed ejaculated into Albert's mouth.

---

1. Albert is a fictitious name.

2. Abigail is a fictitious name.

Also, defendant once touched Albert's penis with his hands and buttocks, and at another time defendant touched Albert's buttocks with his penis when Albert was fully clothed.

Albert further testified about the time when he was directed by defendant to put his penis to defendant's buttocks during which episode defendant wore a purple, heart-covered pair of women's bikini under-wear. Another sexual assault occurred during an incident in which Albert put his mouth on defendant's genitalia. Also, defendant directed Albert to put his mouth on defendant's buttocks and anus because "it felt good." The defendant also performed fellatio on the victim on three occasions.

Albert was able to recall specific aspects of these incidents in graphic detail. Albert never informed anyone about these acts of molestation because he was afraid and feared that defendant would carry out his threat to punch him. However, in March of 1990, Albert confided in a neighbor about defendant's acts of molestation, "[b]ecause, first, I was sick of it, and, second, I didn't like it." The police were immediately notified.

Albert's pediatrician since birth examined him on March 26, 1990, and testified that the examination revealed a dilated anal sphincter that was consistent with the victim's claims of anal penetration by defendant. At the conclusion of the trial the jury returned a verdict of guilty on the four counts of first-degree child molestation. On April 14, 1992, defendant was sentenced to fifty years at the Adult Correctional Institutions, twenty-five years to serve, twenty-five years suspended, with twenty-five years of supervised probation to commence upon his release. Judgment of conviction was entered on May 1, 1992, and defendant filed a timely notice of appeal.

The defendant raises four issues on appeal. Additional facts pertaining to these issues will be discussed as necessary.

## I

### The Limiting–Instruction Issue

The defendant first asserts that the trial justice erred in failing to give a proper limiting instruction regarding testimony from Albert relating to acts outside the dates set forth in the indictment immediately after the testimony was given instead of during the jury charge. The indictment against defendant alleged that four counts of first-degree child molestation occurred between June 1, 1989, and March 23, 1990. At one point during trial Albert testified about events that apparently occurred outside the time frame stated in the indictment. As previously noted, Albert reported many acts of molestation of his person by defendant during the trial. As the record indicates, Albert's testimony regarding the time frames of these events was often confusing and somewhat uncertain. However, testimony revealed that most of the episodes of sexual assault corresponded with the time stated in the indictment. However, defendant claims error regarding testimony given by Albert to an act apparently outside the alleged time frame, an act that occurred on Albert's seventh birthday, December 10, 1988. The challenged testimony reads as follows:

"Q. [MR. MOROWITZ, Assistant Attorney General]: Do you remember when those things you just spoke about first started happening?

"A. [ALBERT]: When it first started?

"Q. Yes. Do you know about when it first started?

"A. Um, my seventh birthday.

"Q. Was that the day you saw the book?

"A. Yes.

"Q. Did he do those things do [sic] you on your seventh birthday?

"A. He showed me the book.

"Q. Did he do the things you just told us about after or before your seventh birthday?

"A. On the first, my first—that first day on my birthday.

"Q. The other things you have talked about, his private to your butt, did that happen before your birthday on your birthday or after your birthday?

"A. On my birthday.

"Q. Did it ever happen after your birthday?

"A. Yes."

The defendant made no objection to this testimony at the time it was presented. However, on appeal, defendant argues that the trial justice should have sua sponte given a limiting instruction to the jury immediately following this testimony. The defendant claims Albert's testimony regarding the act on his birthday was "highly graphic and inflammatory testimony" falling under Rule 404(b) of the Rhode Island Rules of Evidence [3], thus requiring an immediate sua sponte limiting instruction by the trial justice. We conclude that no immediate limiting instruction was required and dismiss defendant's claim on both procedural and substantive grounds. At the outset, defendant failed to make an objection at trial constituting a waiver of this issue. We have consistently held that issues that have not been raised at trial are not properly preserved for appellate review. *State v. Donato*, 592 A.2d 140, 141 (R.I.1991); *State v. Cassey*, 543 A.2d 670, 676 (R.I.1988); *State v. Estrada*, 537 A.2d 983, 986–87 (R.I.1988); *State v. Burke*, 522 A.2d 725, 731 (R.I.1987); *State v. Long*, 488 A.2d 427, 432 (R.I.1985); *State v. Rondeau*, 480 A.2d 398, 399 (R.I.1984); *State v. Byrnes*, 433 A.2d 658, 670–71 (R.I.1981); *State v. Duggan*, 414 A.2d 788, 791 (R.I. 1980). This court has recognized an exception to the raise-or-waive rule in situations wherein basic constitutional rights are concerned. For the exception to apply, the error asserted must go beyond the level of harmless error, the record must be "sufficient to permit a determination of the issue," and counsel's failure to raise the issue must be premised upon a "novel rule of law that counsel could not reasonably have known during the trial." *Donato*, 592 A.2d at 142 (quoting *Estrada*, 537 A.2d at 987 and citing *Burke*, 522 A.2d at 731). The matter presented before us does not constitute such an exception.

It cannot be said on this record and particularly in light of the limiting instruction actu-ally given by the trial justice when he charged the jury, that an earlier instruction would have changed the outcome. It was not until after the trial justice charged the jury that defendant first voiced his concern about this evidence. The defendant erroneously relies on *State v. Brown*, 626 A.2d 228 (R.I. 1993), in suggesting that a trial justice has a sua sponte obligation to interrupt a witness's testimony if prejudicial and give an immediate limiting instruction. In *Brown* this court stated that a defendant's failure to note the absence of a limiting instruction does not prevent him or her from raising the issue of its absence on appeal. 626 A.2d at 234 n. 2 (citing *State v. Jalette*, 119 R.I. 614, 627–28, 382 A.2d. 526, 533–34 (1978)). The court stated that in accordance with *Jalette* a trial justice "shall" offer certain limiting instructions when evidence of other sex acts is admitted. *Brown*, 626 A.2d at 234 n. 2. "The trial justice always should take it upon himself or herself to offer a limiting instruction when admitting evidence of other sex acts." *Id.* However, we part ways with defendant's interpretation in that although the trial justice has a responsibility to issue a limiting instruction in certain instances, there is no requirement that this instruction be given immediately after the testimony has been given. Furthermore, the record indicates that the trial justice promptly gave limiting instructions, to which neither party objected when defendant indicated his concern that parts of Albert's testimony may have pertained to incidents outside the dates in the indictment.

This particular testimony from the victim does not implicate Rule 404(b), and the absence of an immediate limiting instruction did not go beyond the level of harmless error. The exception to the raise-or-waive rule does not apply in the instant case.

## II
### Admissibility of Uncharged Bad Acts

■ The defendant also contends that the testimony of Darlene [4], a friend of the vic-

---

3. Rule 404(b) of the Rhode Island Rules of Evidence provides:

   "Character evidence not admissible to prove conduct; exceptions; other crimes.—(a) * * *

   (b) *Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable."

4. Darlene is a fictitious name.

tim's sister, Abigail, regarding acts by him against her, which were not charged in the indictment were not admissible under Rule 404(b). He asserts that this testimony was not relevant and that the limiting instruction given by the trial justice both immediately after her testimony and during the jury charge did not undo prejudicial harm to him.

As previously mentioned, defendant was also tried and acquitted of two counts of second-degree child molestation against the person of Albert's sister, Abigail. During a "wrestling match" in defendant's home, Abigail testified, she was bitten on the buttocks. Also bitten on the buttocks during this same "wrestling match" was Darlene, Abigail's best friend. The defendant was not charged with any offense related to the biting of Darlene's buttocks; however, Darlene was allowed to testify regarding this uncharged act. The trial justice allowed this evidence in under Rule 404(b) for the limited purpose of showing a common scheme, plan, or design to commit the alleged crime against Abigail. As required by this rule, the trial justice gave a limited instruction to the jurors on how they could treat this evidence, not for the proof of the assault on Abigail as alleged by the state but only for their assessment of whether it shows a common scheme, plan, or design.

In our opinion Darlene's testimony was properly admitted. This otherwise inadmissible evidence of uncharged bad acts was admissible under Rule 404(b) for the purpose of showing a "scheme, plan or design" to commit the charged acts against Abigail. In view of the record, it is quite apparent that Darlene's testimony was necessary to the state's case, and thus the trial justice did not err in admitting the evidence with the attendant limiting instruction.

### III

### Relevancy Issue

■■ The defendant claims that the trial justice erred in excluding relevant and admissible evidence by improperly sustaining objections by the state to the admission of defense-witness testimony, thereby denying defendant his constitutional right to a fundamentally fair trial. In light of the record it is crystal clear that the trial justice acted properly by sustaining objections to irrelevant or otherwise improper questioning by the defense.

In order to establish his defense, defendant presented the testimony of several family members and neighbors in an attempt to portray himself as never alone in his home and, therefore, without the opportunity to molest Albert. The defendant also attempted to portray Albert as the neighborhood enfant terrible, a brat who made false accusations to torment him.

This court is convinced that the trial justice properly limited the introduction of irrelevant, cumulative, and otherwise inadmissible testimony offered by defense witnesses. The defendant's allegations all challenge the trial justice's rulings of relevancy. It has been well established that questions of relevancy are left to the sound discretion of the trial justice and "will not be disturbed on appeal in the absence of a showing that the trial justice abused his discretion to the prejudice of the [complaining] party." *State v. Germano*, 559 A.2d 1031, 1036 (R.I.1989). In a review of evidentiary rulings, this court must give great weight to a trial justice's determination. *State v. Riccio*, 551 A.2d 1183, 1186 (R.I.1988) (citing *State v. Collins*, 543 A.2d 641, 651 (R.I.1988); *State v. Beaumier*, 480 A.2d 1367, 1375 (R.I.1984)).

We have concluded that the trial justice sustained the state's objections because defendant sought testimony that was of no relevance or was cumulative. It was well within his discretion to do so. Clearly, under the facts of this case and on the basis of the record, defendant was not denied his constitutional right to a fair trial.

### IV

### The New–Trial–Motion Issue

■■■ The defendant's final claim of error is that the state's evidence did not prove guilt beyond a reasonable doubt. He contends that the trial justice overlooked or

misconceived material evidence or was otherwise wrong when he denied defendant's motion for a new trial pursuant to Rule 33 of the Superior Court Rules of Criminal Procedure. The defendant's assertion is that the state's evidence was inconsistent, contradictory, and unbelievable, particularly in light of the testimony offered by the defense. Accordingly, defendant asserts, the verdict was against the weight of the evidence.

Rule 33 provides, in relevant part, that, "[t]he court on motion of a defendant may grant a new trial to the defendant if required in the interest of justice * * * ." In ruling on a motion for a new trial, the trial justice acts as a thirteenth "super juror," drawing upon his or her experience to judge the credibility of witnesses and to weigh the evidence independently. *State v. Henshaw*, 557 A.2d 1204, 1208 (R.I.1989). The trial justice must consider all the material evidence in light of the charge to the jury and, using independent judgment, must pass upon the weight and the credibility of the evidence and must accept or reject conflicting testimony. *State v. Dame*, 560 A.2d 330, 333 (R.I.1989). A new trial is only appropriate if the trial justice reaches a different conclusion from that of the jury, and he or she specifically finds that the verdict is against the fair preponderance of the evidence and fails to do substantial justice. *State v. Warren*, 624 A.2d 841, 843 (R.I.1993); *Henshaw*, 557 A.2d at 1208. The new-trial motion must be denied, however, if the trial justice finds that the evidence is balanced or that reasonable minds could arrive at different results. *State v. Vanasse*, 593 A.2d 58, 67 (R.I.1991); *Beauchemin v. Sweeten*, 471 A.2d 624, 626 (R.I.1984) (citing *Yammerino v. Cranston Tennis Club, Inc.*, 416 A.2d 698, 699–700 (R.I.1980)).

This court has held that the denial of a new-trial motion will stand unless the trial justice "overlooked or misconceived material evidence relating to a critical issue or was otherwise clearly wrong." *State v. Caruolo*, 524 A.2d 575, 585 (R.I.1987). The trial justice in this case thoroughly reviewed all the testimony and evidence presented at trial and conscientiously explained the standards that he was bound to follow when reviewing a motion for a new trial. We are of the opinion

that the trial justice met the requirements for denying defendant's motion for a new trial through his complete examination of all the testimony and evidence admitted at trial.

At the new-trial-motion hearing defendant attacked the credibility of Albert, the victim in this case. He attempted to establish that Albert's enjoyment in going over to his house was, according to defendant, inconsistent behavior in a child who was allegedly being sexually molested. He also pointed out an egg-throwing incident that had occurred between himself and Albert on one occasion, immediately after which, defendant pointed out, Albert informed his mother but did not inform her of the sexual molestation. The defendant's interpretation of this situation is that it casts doubt on whether defendant actually molested Albert. In essence defendant's argument is that if Albert could freely tell his mother about an inconsequential "egg fight," then surely he could have told her about the alleged sexual molestation.

In addressing Albert's credibility, the trial justice noted:

"The Court and the jury heard this very young man testify. The Court felt that he did so in an extremely forthright manner. The Court felt he was extremely credible, and the Court has had unfortunate occasions to sit on this type of case in the past, and he is one of the better witnesses that the Court has seen testifying about acts of intimate behavior that had been perpetrated on people of his age, and he underwent rigorous cross-examination, and the fact pattern that he testified to with what the Court determined to be great candor, sincerity and honesty, and the jury heard this testimony."

On the other hand, the trial justice did not find defendant's testimony credible at all. The trial justice determined that defendant's testimony was unworthy of belief, and he was particularly concerned with defendant's testimony that he had had no contact with the children at all, or even the opportunity to molest Albert, when the evidence, presented by both defendant and the state, clearly showed otherwise. Furthermore, the trial justice was not impressed by the testimony

of defendant's witnesses. He found their testimony not credible.

Relying on these findings, the trial justice ruled against the defendant's motion for a new trial, finding the evidence "more than sufficient to prove guilt * * * beyond a reasonable doubt of the four charges * * * ." The defendant asserts that the trial justice overlooked or misconceived evidence because he failed specifically to address the arguments presented by the defendant during his motion. In making his decision, the trial justice compared the credibility of the two most important witnesses, the victim and the defendant. It is the conclusion of this court that the trial justice did not overlook, nor did he misconceive, any material evidence relating to critical issues. The defendant's claim of error on this issue is wholly without merit.

For the foregoing reasons the defendant's appeal is denied and dismissed, the judgment of conviction is affirmed, and the papers of the case are remanded to the Superior Court.