STATE

v.

Javier MERIDA.

No. 2006–317–C.A.

Supreme Court of Rhode Island.

Nov. 25, 2008.

Lauren S. Zurier, Providence, for Plaintiff.

Richard K. Corley, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

On May 9, 2006, a jury found the defendant, Javier Merida, guilty of the following felonies: one count of second-degree child molestation in violation of G.L.1956 § 11–37–8.3 and two counts of first-degree child molestation in violation of § 11–37–8.1. Thereafter, on July 7, 2006, he received one thirty-year sentence on the second-degree child molestation count and two forty-year sentences on the two first-degree child molestation counts, all to be served concurrently. The court further ordered the defendant to have no contact with the victim for forty years and to make restitution.

On appeal, defendant argues (1) that, in purported violation of his confrontation rights under the Sixth Amendment to the United States Constitution and article 1, section 10 of the Rhode Island Constitution, the trial court committed reversible error by improperly preventing him from cross-examining two important witnesses for the prosecution with respect to their motives, possible bias, and general credibility; and (2) that, in allowing into evidence testimony concerning certain uncharged incidents of alleged sexual misconduct by defendant, the trial court misapplied Rule 404(b) of the Rhode Island Rules of Evidence and thereby committed reversible error. For the reasons set forth below, we affirm the judgment of the Superior Court.

### Facts [1] and Travel

At a jury trial held in May of 2006, the then twelve-year-old complainant, whom

---

1. The facts set forth in this section were adduced from the testimony of the multiple witnesses who testified at trial.

we will refer to as Betsy,[2] testified that defendant, who is her paternal grandfather, had repeatedly molested her between two and five years prior to the trial, when she was between the ages of seven and ten. Both Betsy and her maternal grandmother (Donna)[3] testified that, at that time in her life, Betsy routinely spent the weekends with her paternal grandparents in their Cranston home. Betsy further testified that the just-referenced incidents of molestation did not occur every weekend; she added that, when such incidents did occur, they would occur when her paternal grandmother was not at home and she was alone with defendant.

## I

### The Complainant's Trial Testimony

Betsy testified that the first incident of touching by defendant that she could clearly remember occurred when she was approximately eight or nine years old; that incident occurred during one of the above-mentioned weekend visits. She testified that, at a moment when she was in defendant's bedroom, he grabbed and held onto her breasts and touched "inside" of her "private" (complainant's word) with his fingers.[4] Betsy additionally testified that, on a different occasion, defendant put his "private" into her "private" while both were in the bathroom at defendant's home.[5]

Betsy also testified to two additional incidents of vaginal intercourse that she said took place in defendant's bedroom. According to Betsy's testimony, one of these incidents occurred when defendant called Betsy over to his bed, removed her clothing, placed her on top of him, and put his "private" inside her, which act she said was painful.[6] Additionally, while testifying at trial, Betsy unexpectedly described a second incident of vaginal intercourse that she said also occurred in defendant's bedroom.[7] Betsy testified that this incident occurred when defendant called her over to his bed, threw her on her back onto the bed, got on top of her, moved her legs apart, and placed his "private" inside her, moving it in and out. This surprise incident had neither been charged in the indictment nor specified as uncharged misconduct that the state would seek to introduce pursuant to one of the exceptions set forth in Rule 404(b). There was no defense objection to Betsy's testimony concerning this surprise incident; moreover, during cross-examination, defense counsel questioned Betsy about the surprise incident and especially about her failure to have disclosed it prior to testifying at trial. At a later point in the trial, the trial justice, the prosecutor, and the defense at-

2. The name of the complainant (who is a minor) and all other names used in this opinion are pseudonyms, except for defendant's.

3. Betsy's legal guardians are her maternal grandparents.

4. This incident formed the basis for one count of second-degree child molestation (hand/breast contact) and one count of first-degree child molestation (digital/vaginal penetration).

5. This incident formed the basis for a second count of first-degree child molestation (vaginal intercourse in the bathroom); the defendant was found not guilty of that charge.

6. This incident formed the basis for a third count of first-degree child molestation (vaginal intercourse in the bedroom).

7. Since Betsy's trial testimony about the second incident of vaginal intercourse in the bedroom came as a surprise to both the prosecutor and defense counsel, for the sake of convenience we shall hereinafter refer to it as "the surprise incident." The defendant has never been criminally charged with respect to this alleged incident.

torney all agreed that this surprise incident, if deemed admissible, constituted Rule 404(b) evidence.[8]

## II

### The Testimony of Defendant's Niece by Marriage

Just before the trial commenced, the trial justice ruled (over defendant's objection) that the testimony of eighteen-year-old Lisa,[9] alleging uncharged sexual assaults by defendant against her that she said had occurred between eight and twelve years earlier, would be admissible. In ruling that Lisa's testimony should not be precluded pursuant to Rule 404(b), the trial justice noted (1) that both Lisa and Betsy had alleged digital penetration; (2) that the ages of both girls at the time the alleged incidents occurred were similar (both being young girls above toddler age and below adolescence); (3) that both girls had a family relationship with defendant; and (4) that both had had unsupervised contact with defendant in his Cranston residence. In her ruling, the trial justice found that the evidence fell within recognized exceptions to the exclusionary provisions of Rule 404(b) in that it tended to show that the alleged assaults on Betsy were part of a common scheme or plan and were relevant to show motive, intent, and plan to abuse children of similar age in a somewhat similar manner. The trial justice also determined that Lisa's testimony was necessary to explain why Betsy disclosed her abuse allegations at the time that she did and also to explain the process and events leading up to her disclosure. Additionally, assessing the evidence pursuant to Rule 403 of the Rhode Island Rules of Evidence, the trial justice found that its probative value (for the purposes of establishing common scheme or plan, motive, and intent) was not substantially outweighed by its prejudicial effect so long as an appropriate cautionary instruction were to be given.[10]

At the previously referenced pretrial hearing wherein the prosecutor sought leave to use Lisa's testimony as Rule 404(b) evidence, defense counsel sought permission to impeach Lisa, pursuant to Rule 608(b) of the Rhode Island Rules of Evidence, with information indicating that Lisa had stolen money from her aunt. In

---

8. In order to avoid verbosity, we often refer to witnesses who are permitted to testify pursuant to one of the recognized exceptions to Rule 404(b) of the Rhode Island Rules of Evidence as being "Rule 404(b) witnesses," and we also speak of "Rule 404(b) testimony" and of "Rule 404(b) evidence." It should at all times be remembered, however, that Rule 404(b) is fundamentally a rule of exclusion. Our own Rule 404(b) cases are replete with statements to that effect. *See, e.g., State v. Reis*, 815 A.2d 57, 62 (R.I.2003) ("Rule 404(b) represents an exception to the above-stated general rule."); *State v. Garcia*, 743 A.2d 1038, 1050 (R.I.2000) (referring to "the general exclusionary rule of Rule 404(b)"); *State v. Gallagher*, 654 A.2d 1206, 1210 (R.I.1995) (discussing the exceptions "to the exclusionary rule"); *State v. Toole*, 640 A.2d 965, 971 (R.I.1994) (referring to "one of the exceptions to the general prohibition"); *see also State v.*

*Chartier*, 619 A.2d 1119, 1123 (R.I.1993); *State v. Lemon*, 497 A.2d 713, 721 (R.I.1985); *State v. Jalette*, 119 R.I. 614, 623–28, 382 A.2d 526, 531–33 (1978); *see generally United States v. Cortijo–Diaz*, 875 F.2d 13, 15 (1st Cir.1989).

9. Lisa is defendant's niece by marriage.

10. It is noteworthy that, before counsel delivered the first opening statement, the trial justice did in fact give the jury an initial cautionary instruction with respect to the Rule 404(b) evidence. Additional Rule 404(b) instructions were given at the close of Lisa's testimony and when the jury was instructed prior to deliberations. Although defense counsel objected to the introduction of Lisa's testimony as not being authorized by one of the exceptions to Rule 404(b), neither party objected to the content of these instructions.

addition to seeking leave to impeach Lisa with the fact of the theft, defense counsel also sought to be allowed to seek to impeach her further by establishing that, instead of confessing to the crime, Lisa had allowed her own father to be charged and convicted of the theft. To determine the scope of what defense counsel might be allowed to use at trial for impeachment purposes pursuant to Rule 608(b), the trial justice permitted defense counsel to conduct a *voir dire* of Lisa. During this *voir dire* (in which Lisa admitted to stealing the above-referenced money), defense counsel attempted to elicit from Lisa testimony as to (1) the extent of the knowledge that Betsy had concerning Lisa's theft and (2) what benefit may have accrued to Betsy as a result of the theft. Following that *voir dire*, the trial justice ruled that Lisa's testimony would be limited to her own personal involvement in the theft; defense counsel would not be allowed to elicit testimony from her regarding her father's conviction for the theft. The trial justice also ruled that Lisa's testimony did not "suggest a [Rule] 608(b) issue" as to Betsy and that, therefore, defense counsel would not be allowed to question Betsy about the incident.[11]

Appearing at trial as the state's very first witness, Lisa, who was eighteen at the time of trial, testified that defendant had molested her when she was between the ages of five and ten on occasions when she was alone with him in his home office. According to Lisa's testimony, defendant would sit her under a desk in the home office area and would "touch" her vagina under her clothing with his fingers going "inside." Although defense counsel objected to the introduction of Lisa's testimony as Rule 404(b) evidence, *he did not object to the order in which the state was presenting its case (i.e.,* that Lisa's Rule 404(b) testimony would be the very first evidence that the jury would hear). The trial justice offered to give an additional Rule 404(b) instruction during a break in Lisa's testimony concerning the uncharged alleged misconduct; but defense counsel instead requested that such an instruction be given at the conclusion of her entire testimony, and the trial justice complied with that request.

### III

### The Verdict

On May 9, 2006, the jury found defendant guilty of the one count of second-degree child molestation with which he had been charged and also of two counts of first-degree child molestation. The jury found defendant not guilty of one of the counts of first-degree child molestation with which he had been charged.[12] The defendant's motion for a new trial having been denied, he was sentenced on July 7, 2006. This appeal was timely filed on July 20, 2006.

On appeal, defendant argues (1) that the trial court committed reversible error in improperly preventing defense counsel

---

11. During the trial itself, defense counsel was allowed to conduct a *voir dire* of Betsy (outside the presence of the jury) concerning her knowledge of Lisa's theft. At the conclusion thereof, the trial justice ruled that Betsy's testimony as to the theft did not fall within Rule 608(b) of the Rhode Island Rules of Evidence since it would only be "cumulative" as it related to Lisa. The record of this *voir dire* indicates that Betsy did not observe Lisa take the money from the car, but later "as-

sumed" that she had taken the money when she later saw Lisa in a store with "a lot of money."

12. It will be recalled that the one count of first-degree child molestation of which the jury found defendant not guilty related to an act of vaginal intercourse that allegedly occurred in the bathroom at defendant's home.

from cross-examining two important witnesses for the prosecution (*viz.*, Betsy and Lisa) with respect to their motives, possible bias, and general credibility in violation of his confrontation rights under the Sixth Amendment to the United States Constitution and article 1, section 10 of the Rhode Island Constitution and (2) that, in allowing into evidence allegations concerning uncharged incidents of sexual misconduct by defendant, the trial court misapplied Rule 404(b) and thereby committed reversible error.

### Standard of Review

▮ The exercise of a trial justice's discretion in limiting the scope of cross-examination will not be disturbed absent a clear abuse of discretion. *State v. Feole*, 748 A.2d 239, 242 (R.I.2000). Although a criminal defendant has a constitutional right to cross-examine prosecution witnesses, "this right is far from absolute." *State v. Lopez*, 943 A.2d 1035, 1042 (R.I. 2008) (internal quotation marks omitted). Further, this right is "tempered by the dictates of practicality and judicial economy"; trial justices are authorized to exercise sound discretion in limiting the scope of cross-examination. *State v. Ramirez*, 936 A.2d 1254, 1261 (R.I.2007) (internal quotation marks omitted); *see also State v. Bettencourt*, 723 A.2d 1101, 1109–10 (R.I. 1999).

▮ Similarly, questions as to the admissibility *vel non* of evidence are confided to the sound discretion of the trial justice, and this Court will not interfere with a trial justice's decision in that regard unless there was a clear abuse of discretion and

the evidence was both prejudicial and irrelevant. *State v. Mohapatra*, 880 A.2d 802, 805 (R.I.2005); *see also State v. Breen*, 767 A.2d 50, 58 (R.I.2001); *State v. Gabriau*, 696 A.2d 290, 294 (R.I.1997); *State v. Martinez*, 651 A.2d 1189, 1194 (R.I.1994).

### Analysis

### I

### The Right of Confrontation

The defendant contends on appeal that the limitations[13] the trial justice placed on his cross-examination of both Betsy and Lisa with respect to Lisa's theft of money from her aunt's car constituted *per se* violations of his constitutional right of confrontation. Alternatively, defendant contends that, even if no *per se* constitutional violations occurred, the limitations placed on his cross-examination of Betsy and Lisa were such an abuse of discretion as to constitute reversible error. More specifically, defendant contends that the limitations imposed by the trial justice prevented him from cross-examining Betsy and Lisa with respect to their motives, possible bias, and general credibility; he argues that, for that reason, he is entitled to a reversal.

▮ It is important to note that the record clearly indicates that the pretrial *voir dire* of Lisa was conducted for the purpose of determining what would be allowable for impeachment pursuant to Rule 608(b)—a rule which deals with how one proceeds in attacking or supporting *the credibility* of a witness; motive and bias are not the focus of this rule.[14] In fact, as

---

**13.** Specifically, these limitations included the ruling that, with respect to Lisa, defense counsel would not be allowed to elicit testimony from her regarding her father's conviction for the theft that she perpetrated. With respect to Betsy, the trial justice ruled that

defense counsel would not be allowed to question Betsy about the incident at all.

**14.** Rule 608(b) reads in pertinent part as follows:

the *voir dire* was about to begin, the trial justice stated: "Right now we'll deal with the voir dire. The sole purpose of this hearing is the [Rule] 608 issue."

Additionally during defendant's cross-examination of Lisa, when attempting to be allowed to elicit testimony about the theft and its consequences, defense counsel focused on the credibility issue; he argued to the trial justice:

"I would renew my request to go into the situation involving the father, specifically that the father was charged, the father went to jail. I think it's highly relevant and absolutely essential to show that if [Lisa is] willing to have her father go to jail for her, she's willing to lie about this [presumably the sexual assault by defendant]."

In addressing defense counsel's request to further cross-examine Lisa about the theft pursuant to Rule 608(b), the trial justice concluded that the potential for confusion and prejudice substantially outweighed the probative value of that potential testimony

since further inquiry into the theft would raise an issue other than those involved in the case at bar.

By contrast with the situation at issue in the recently decided case of *State v. Tiernan*, 941 A.2d 129 (R.I.2008), the record in the instant case indicates that defense counsel focused on Lisa's theft as being relevant to the issue of Lisa's general credibility under Rule 608(b) and not as evidence of her motive or possible bias. In *Tiernan*, where we held that the trial court erred in excessively limiting the cross-examination of a witness, defense counsel had expressly indicated to the trial justice that the testimony he was attempting to elicit might reveal the bias of the witness against the defendant in view of the fact that the witness had a pending civil lawsuit against the defendant and therefore had or might have had "an incentive to testify in a particular way * * *." *Tiernan*, 941 A.2d at 131.[15]

Here, no similar argument concerning counsel's desire to impeach Lisa for bias or

"Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, or, in the discretion of the trial judge, evidence of prior similar false accusations, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified." The scope of cross-examination under this rule is limited in that the cross-examiner must accept the answers of the witness and may not introduce extrinsic evidence. *See State v. Martinez*, 824 A.2d 443, 449 (R.I.2003); *State v. Brown*, 574 A.2d 745, 749 (R.I.1990) ("[A] witness may not be impeached on collateral matters by the introduction of extrinsic evidence. The cross-examiner is restricted to

the answers of the witness.") (quoting *State v. Bowden*, 439 A.2d 263, 268 (R.I.1982)).

15. To the extent that our initial opinion in *State v. Tiernan*, 941 A.2d 129 (R.I.2008), indicated that total or virtually total preclusion of cross-examination as to possible bias would require vacation of a verdict on a *per se* basis, we promptly issued an order acknowledging that the United States Supreme Court had held that its own landmark decision concerning impeachment for bias (*viz.*, *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)) "should not be read as establishing, without analysis, a categorical exception to the harmless-error rule." *State v. Tiernan*, 944 A.2d 176, 176 (R.I.2008) (mem.) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 683, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). We then went on to state that "as a matter of federal constitutional law, an improper restriction on cross-examination such as occurred in this case does not call for vacation of the verdict on a *per se* basis, but rather should be subjected to harmless-error analysis." *Tiernan*, 944 A.2d at 176.

motive was ever brought to the attention of the trial justice. As the record indicates, the cross-examination of Lisa was undertaken explicitly for the purpose of attacking the witness's *credibility* in accordance with Rule 608(b).

■ Although there is no indication in the record that defense counsel at any point during the trial advanced a theory of motive or bias with respect to either Betsy or Lisa, he nevertheless now seeks to raise the issue for the first time on appeal. This Court's well-settled "raise-or-waive" rule precludes us from considering at the appellate level issues not properly presented before the trial court. *See State v. Donato*, 592 A.2d 140, 141 (R.I.1991) ("As established by this [C]ourt, an issue that has not been raised and articulated previously at trial is not properly preserved for appellate review."); *see also State v. Gomes*, 881 A.2d 97, 113 (R.I.2005); *State v. Gomez*, 848 A.2d 221, 237 (R.I.2004).[16] Accordingly, we conclude that defendant did not preserve this issue for appeal.

■ In addition to his constitutional right of confrontation argument, defendant alternatively argues that the trial justice's decision to limit the scope of Lisa's cross-examination (by precluding counsel from questioning Lisa about her father's conviction for the crime) was an abuse of the discretion accorded to her with respect to evidentiary rulings. In our judgment, however, the trial justice did not abuse her discretion when she limited defense counsel's cross-examination of Lisa to the facts that she stole the money and then spent it. After hearing Lisa's *voir dire* and trial

testimony, the trial justice found the topic of Lisa's father's conviction for the crime to be "too far afield" and "too speculative." We perceive no abuse of discretion in that ruling.

■ Similarly, the trial justice did not abuse her discretion by limiting the scope of defense counsel's cross-examination of Betsy concerning Lisa's theft. Betsy testified on *voir dire*, outside the presence of the jury, that she did not see Lisa take the money and that she did not speak with Lisa about the theft. Betsy further testified that she "assumed" Lisa had taken money from the car when she saw Lisa in a store with "a lot of money"; she added that none of the stolen money was spent on her. After this questioning of Betsy, the trial justice found that any questioning of Betsy concerning Lisa's theft did not fall within what Rule 608(b) would permit and would be "nothing more than cumulative as it relates to [Lisa] at best." These discretionary calls are readily sustainable.

In our judgment, the trial justice did not abuse her discretion by limiting as she did the scope of the cross-examination of both Betsy and Lisa.

## II

### Rule 404(b) Evidence

The next question presented is whether the trial justice committed reversible error by admitting, pursuant to certain recognized exceptions to the exclusionary provisions of Rule 404(b) of the Rhode Island Rules of Evidence, evidence of defendant's

---

**16.** It is true that there exists a narrow exception to our "raise-or-waive" rule. *State v. Mastracchio*, 672 A.2d 438, 446 (R.I.1996). For that exception to apply, however, "the alleged error must be more than harmless, and the exception must implicate an issue of constitutional dimension derived from a novel rule of law that could not reasonably have

been known to counsel at the time of trial." *State v. Breen*, 767 A.2d 50, 57 (R.I.2001); *see generally Pollard v. Acer Group*, 870 A.2d 429, 432–33 (R.I.2005); *State v. Burke*, 522 A.2d 725, 731–32 (R.I.1987). It is clear that the instant situation does not fall within the parameters of the narrow exception to the "raise-or-waive" rule.

uncharged sexual misconduct allegedly committed against Betsy and Lisa; defendant contends that there is an insufficient degree of similarity between the uncharged sexual misconduct allegations and the acts for which he was on trial.

The admissibility (*vel non*) of evidence is a matter confided to the sound discretion of the trial justice; this Court will not interfere with a trial justice's decision in that regard unless there has been a clear abuse of discretion and the evidence was both prejudicial and irrelevant. *See State v. Hopkins*, 698 A.2d 183, 186 (R.I.1997) (indicating that the decision as to whether or not to admit evidence of uncharged sexual misconduct under Rule 404(b) is confided to the discretion of the trial justice); *see also Mohapatra*, 880 A.2d at 805–06.

Rule 404(b) reads:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable."

■■■ Evidence of a defendant's prior sexual misconduct may not be admitted to prove that the defendant has a propensity towards sexual offenses and is, therefore, probably guilty of the crime charged. *Mohapatra*, 880 A.2d at 806 ("In molestation or sexual assault cases, evidence of a defendant's prior sexual misconduct cannot be admitted to prove that 'defendant is a bad man, and that he has a propensity toward sexual offenses and, therefore, probably committed the offenses with which he is charged.'") (quoting *State v. Quattrocchi*, 681 A.2d 879, 886 (R.I. 1996)).[17] Additionally, when a person other than the complainant testifies about prior sexual misconduct, such alleged misconduct must be "nonremote" and "similar" to the charged offense. *State v. Jalette*, 119 R.I. 614, 627, 382 A.2d 526, 533 (1978). Offenses qualify as "nonremote" and "similar" when they are "closely related in time, place, age, family relationships of the victims, and the form of the sexual acts." *State v. Pignolet*, 465 A.2d 176, 181 (R.I. 1983); *see also State v. Brigham*, 638 A.2d 1043, 1045 (R.I.1994). This Court ruled in *Jalette* that such evidence is admissible "only when [the Rule 404(b) exception at issue] is relevant to proving the charge lodged against the defendant" and "only when reasonably necessary." *Jalette*, 119 R.I. at 627, 382 A.2d at 533. When evidence is admitted pursuant to an exception to Rule 404(b), the trial justice must instruct the jury on the limited purpose for

---

**17.** Rule 404(b) reflects the venerable concept that propensity evidence has no place in a criminal trial. While Rule 404(b) does admit of certain exceptions, our law's general disfavor of propensity evidence should at all times be borne in mind. *See, e.g., State v. Stewart*, 663 A.2d 912, 923 (R.I.1995) ("[E]vidence of prior crimes is not admissible to prove the propensity of a defendant to commit such a crime * * *."); *State v. Brigham*, 638 A.2d 1043, 1044 (R.I.1994) ("As a general rule, in the prosecution of a specific crime, evidence of past, unconnected, uncharged criminal behavior is not admissible to prove a defendant's propensity to commit the crime charged. * * * The basis for excluding such evidence of 'other crimes' is the belief that 'the potential for creating prejudice in the minds of the jurors outweighs its probative value.'") (quoting *State v. Brown*, 626 A.2d 228, 233 (R.I.1993)); *see generally Michelson v. United States*, 335 U.S. 469, 475–76, 69 S.Ct. 213, 93 L.Ed. 168 (1948) (Jackson, J.); *United States v. Frankhauser*, 80 F.3d 641, 648 (1st Cir.1996); *People v. Zackowitz*, 254 N.Y. 192, 172 N.E. 466 (1930) (Cardozo, C.J.).

which the evidence may be considered. *Hopkins*, 698 A.2d at 185.[18]

## A

### The order of the state's witnesses at trial

■ The defendant contends that an error occurred at trial with respect to *the order* in which the state presented its witnesses. In particular, he objects to the fact that Lisa, who testified as a Rule 404(b) witness,[19] was called first; she gave her Rule 404(b) testimony even before the complaining witness testified. The record is clear, however, that, when Lisa was called to testify, defense counsel voiced no objection to *the order* in which the prosecution was introducing this Rule 404(b) evidence. In view of the strictures of our "raise-or-waive" rule, defendant may not properly raise that issue on appeal.

## B

### Allegations of prior sexual misconduct involving Lisa

The defendant contends that the trial court erred in allowing Lisa to testify concerning her allegations that defendant had engaged in uncharged sexual misconduct against her; defendant contends that Rule 404(b) was thereby violated. Although, at the conclusion of the pre-trial *voir dire* of Lisa, defense counsel objected to the prosecution's proposed use at trial of Lisa's testimony concerning alleged uncharged

sexual misconduct, he did not raise that objection when she testified at trial.

In most instances, a trial court's preliminary granting or denial of a motion *in limine* "need not be taken as a final determination of the admissibility of the evidence referred to in the motion." *State v. Torres*, 787 A.2d 1214, 1220 (R.I.2002) (quoting *State v. Fernandes*, 526 A.2d 495, 500 (R.I.1987)); *see also State v. Brown*, 900 A.2d 1155, 1162 (R.I.2006); *Gomes*, 881 A.2d at 108 ("[E]xcept when the *in limine* ruling is clearly *definitive*, it would at the very least be prudent for counsel to articulate the objection once again in the vital context of the trial itself.").[20]

It is not at all clear to us from the record in this case that the *in limine* ruling at issue was "clearly *definitive*." However, we need not and do not pass upon that issue. We choose not to decide the preservation issue in this instance because defendant's substantive Rule 404(b) argument is unpersuasive even if it was properly preserved.

Questions as to the admissibility of evidence *vel non* are confided to the sound discretion of the trial justice; this Court will not interfere with a trial justice's decision in that domain unless we perceive a clear abuse of discretion and the evidence was both prejudicial and irrelevant. *Breen*, 767 A.2d at 58 ("The decision on whether evidence of other crimes is relevant to a permissible purpose is left to the sound discretion of the trial justice, and on

18. It should be noted that, although the trial justice must issue a limiting instruction when evidence of other alleged sexual acts is admitted, "there is no requirement that this instruction be given immediately after the testimony has been given." *State v. Cardoza*, 649 A.2d 745, 748 (R.I.1994).

19. *See* note 8, *supra*.

20. We take this opportunity once again to urge counsel to err on the side of caution with

respect to obtaining a ruling in the vital context of the actual trial even when there has already been an *in limine* ruling. While there are instances when an *in limine* ruling is unequivocally definitive *(e.g., State v. Andujar*, 899 A.2d 1209, 1222 (R.I.2006)), that is often not the case. *See, e.g., State v. Carvalho*, 892 A.2d 140, 146 (R.I.2006) ("A motion *in limine* is inherently conditional.").

appeal we shall only disturb his or her decision when it constitutes an abuse of discretion * * * and the evidence was both prejudicial and irrelevant.") (internal quotation marks omitted); *see also Mohapatra,* 880 A.2d at 805. Additionally, when someone other than the complaining witness testifies about alleged prior sexual misconduct, these offenses must be "nonremote" and "similar"—*i.e.,* they must be "closely related in time, place, age, family relationships of the victims, and the form of the sexual acts." *Pignolet,* 465 A.2d at 181; *see also Jalette,* 119 R.I. at 627, 382 A.2d at 533. Finally, when such evidence is admitted, the trial justice must instruct the jury on the limited purpose for which the evidence may be considered. *Hopkins,* 698 A.2d at 185.[21]

■ In determining whether Lisa's testimony alleging uncharged sexual misconduct by defendant against her fell within an exception to the exclusionary provisions of Rule 404(b), the trial justice pointed to the following factors: both Betsy and Lisa had alleged digital penetration; the age ranges of both girls at the time of the alleged abuse were similar (both being young girls above toddler age and below adolescence); both had a family relationship with defendant;[22] and both had had unsupervised contact with defendant in his Cranston residence. In her ruling, the trial justice found that the evidence was "relevant to show motive, intent, plan to abuse children of a similar age in somewhat similar manner * * *." In addition, cognizant of the requirement that the proffered evidence be "reasonably necessary,"[23] the trial justice determined that Lisa's testimony was necessary to explain why Betsy disclosed the abuse allegations when she did and to explain the process and events leading up to her disclosure. *See Hopkins,* 698 A.2d at 186.

Additionally, engaging in the weighing process that Rule 403 requires, the trial justice found that the probative value of the evidence (for the purposes of establishing common scheme or plan, motive, and intent) was not substantially outweighed by its prejudicial effect so long as the jury was given an appropriate cautionary instruction. We perceive no basis for ruling that the trial justice clearly erred in making that determination.

Taking into account all of the foregoing considerations, it is our judgment that the trial justice did not abuse her discretion in admitting, pursuant to one of the exceptions to Rule 404(b), Lisa's testimony alleging that defendant had engaged in uncharged sexual misconduct against her. In so ruling, we specifically note that appropriate limiting instructions were given. *See* note 21, *supra.*

## C

### The surprise incident

■ The defendant additionally contends that the trial justice violated Rule 404(b) in permitting into evidence Betsy's testimony concerning the surprise incident; this testimony was unanticipated and presented itself for the first time at trial. However, the record indicates that

---

**21.** Prior to the first opening statement, the trial justice gave the jury an initial Rule 404(b) instruction. Although the trial justice offered to give an additional Rule 404(b) instruction during a break in Lisa's testimony, defense counsel requested that the instruction be given at the end of Lisa's testimony (including her cross-examination); additional Rule 404(b) instructions were in fact given at that point and again when the jury was instructed prior to its deliberations.

**22.** It will be recalled that Betsy is defendant's granddaughter while Lisa is his niece.

**23.** *Jalette,* 119 R.I. at 627, 382 A.2d at 533.

at no point during Betsy's testimony did defense counsel object to the mention of this additional incident. Further, defense counsel opted to cross-examine Betsy regarding the surprise incident and regarding her failure to disclose it prior to testifying at trial.[24] Although no limiting instruction was given immediately following Betsy's testimony concerning this additional allegation of uncharged sexual misconduct, such an instruction (as it pertained to both Betsy's testimony with respect to the surprise incident and Lisa's testimony about defendant's alleged sexual misconduct towards her) was given when the jury was instructed prior to beginning its deliberations.

■ Although a trial justice is required to give a limiting instruction when admitting evidence of prior bad acts under one of the exceptions to Rule 404(b), it is not required that the instruction be given immediately after the pertinent testimony. *State v. Cardoza,* 649 A.2d 745, 748 (R.I. 1994) ("[T]here is no requirement that this instruction be given immediately after the testimony has been given."); *see also State v. Brown,* 626 A.2d 228, 234 n. 2 (R.I.1993) ("The trial justice always should take it upon himself or herself to offer a limiting instruction when admitting evidence of other sex acts."); *Jalette,* 119 R.I. at 627, 382 A.2d at 533–34. When a defendant fails to object to the introduction of the evidence at trial, the trial justice's failure to issue a *sua sponte* cautionary instruction constitutes reversible error only if a defendant does not attempt to utilize the uncharged incidents to his or her advantage. *State v. Toole,* 640 A.2d 965, 971 (R.I.1994) (using uncharged offenses in an

attempt to discredit and challenge the credibility of the complaining witness on cross-examination and in closing argument, coupled with defense counsel's failure to request a limiting instruction, did not constitute reversible error).

Since, in both her oral instructions prior to deliberations and in the written instructions with which the jury was provided, the trial justice gave a limiting instruction informing the jury how it should deal with Betsy's testimony concerning the surprise incident, it is our opinion that the trial justice did not abuse her discretion in admitting this testimony pursuant to one of the recognized exceptions to Rule 404(b).

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior Court. The record may be remanded to the Superior Court.

---

24. Throughout the trial, a theme advanced by defense counsel was that truthful stories should remain invariable. It appears from the record that, in both his cross-examination and his closing argument, defense counsel focused on Betsy's testimony concerning the surprise incident in an attempt to persuade the jury that, because her story had changed, it was not truthful; in other words, defense counsel sought to *use* the surprise incident so as to strengthen the defendant's case. *See Toole,* 640 A.2d at 971.