June 18, 2026

**Supreme Court**

No. 2024-57-C.A.
(K1/22-56A)

State                    :

    v.                   :

Francisco Vasquez.       :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                     :

v.                      :

Francisco Vasquez.        :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Lynch Prata, for the Court.** The defendant, Francisco Vasquez (Vasquez), appeals from a Superior Court judgment of conviction on one count of first-degree sexual assault, for which he received a sentence of twenty-five years of incarceration at the Adult Correctional Institutions, with twelve years to serve, and thirteen years suspended, with probation. On appeal, Vasquez argues that the trial justice erred in denying his motion to strike DNA testimony given by a laboratory supervisor who did not perform the relevant testing. For the reasons set forth herein, we affirm the judgment of the Superior Court.

**Facts and Travel**

In January 2022, a criminal indictment was filed against Vasquez charging him and the co-defendant, Hector Ramirez (Ramirez), with first-degree sexual

- 1 -

assault. On July 11, 2023, a jury trial on the charge commenced in the Kent County Superior Court.

At trial, the complainant testified that on the night of March 5, 2021, or the early morning of March 6, 2021, she had been sexually assaulted by Vasquez in a room later determined to be in a Motel 6. The complainant testified that she had been drinking at home by herself that evening when Vasquez invited her to a social gathering. The complainant agreed to join Vasquez, who picked her up with his friend Ramirez. The complainant and Vasquez had known each other for a couple years, but she did not know Ramirez very well. On the way to the gathering, the group stopped to purchase alcohol. During that stop, Vasquez bought the complainant a bottle of tequila. The trio arrived at the gathering, and throughout the night the complainant continued to drink more alcohol. The complainant testified that, at one point in the evening, Vasquez escorted her to the bathroom and tried to kiss her, but she resisted. Eventually, the complainant asked the host of the gathering for a ride home. Earlier in the evening, Vasquez had informed the complainant that the host would bring her home; however, the host declined so the complainant stayed at the gathering and had another drink.

The complainant testified that the next thing she remembered was awakening in an unfamiliar room, lying flat, and being unable to move her body. She opened her eyes to see Vasquez down in her vaginal area. She then heard Vasquez say

- 2 -

"[s]he's waking up. Grab her." She turned her head and saw Ramirez to her side before she passed out. The complainant woke up again to see Vasquez atop her, making a "sexual movement." She felt pressure in her vagina. The complainant still had no strength to move her body, she cried and asked Vasquez to stop, but he did not. The complainant then passed out again.

When the complainant next awoke on the morning of March 6, 2021, she saw Vasquez and Ramirez sitting at the end of the bed. She was unfamiliar with the room and noticed that her clothes had been put on her haphazardly. The complainant screamed at the two men, asking what they had done to her. Eventually, the pair helped the complainant into Ramirez's minivan and brought her home. Throughout the ride, the complainant continued to yell at the two men, asking why they had raped her.

Later that day, the complainant went to her best friend's house and disclosed the events of the prior evening. The complainant then drove to the hospital; and, while in the parking lot she messaged Vasquez and Ramirez separately, asking why they had raped her. In response to her messages, Vasquez called the complainant. During the phone call, Vasquez denied that he had raped the complainant and suggested that she had "dreamed it." After the call, the complainant went to the Women and Infants Hospital emergency room, where she later completed a rape kit and spoke with a police officer. The complainant remained in the hospital for a few

- 3 -

days.  During her stay she was placed on suicide watch, which entailed twenty-four-hour supervision.  After her release, the complainant provided the police with a statement and later provided officers the clothes she had been wearing on the night of the incident.

The complainant asserted that, aside from the few memories she had testified to, she could not recall what took place that night or in the early morning hours.  She denied consenting to go to a motel or consenting to having sex with Vasquez or Ramirez.  On cross-examination, the complainant maintained that she considered Vasquez a friend, that she had not consented to sex, and that she could not recall many particulars of the incident.

Next, an employee from the Motel 6, where the incident took place, testified that she had checked Vasquez into a room on March 6, 2021, at 1:24 a.m.  The employee testified that shortly thereafter, during a walk-through of the premises, she noticed that Vasquez was with another man and a woman who was "slouched over [and] definitely intoxicated."  Specifically, the employee explained that the woman "had her head hung down," and one of the men was trying to kiss her neck while the other man tried holding her up.  On cross-examination, the employee stated that she saw the woman kissing both men.

Cara Lupino (Lupino), the supervisor of the Forensic Biology and DNA Laboratory at the Rhode Island Department of Health, then testified as an expert in

the field of forensic science. Lupino testified that after the DNA analysis was completed by one forensic analyst, Rachel Vele (Vele), she, acting as supervisor, reviewed and approved the analysis. Lupino testified that she reviewed the case file, confirmed that the results were accurate, and approved and co-signed Vele's reports. Lupino referenced two summaries of analytical findings involving Vasquez, one from April 2021 and one from July 2021. Both tests were performed by Vele and reviewed by Lupino.

The state moved for the reports to be entered into evidence as full exhibits. Prior to ruling on the reports' admissibility, the trial justice held a sidebar conference and Vasquez requested that Ramirez's name be redacted from the reports.[1] The trial justice expressed confusion at defendant's request that the documents be redacted, stating that it did not "make any sense to [him]." Ultimately, the state withdrew its request to admit the reports as full exhibits and the trial justice allowed Lupino to refer to the reports during her testimony. The trial justice then gave the jury a limiting instruction, *sua sponte*, directing them not to consider Ramirez's actions or

---

[1] Specifically, trial counsel for Vasquez contended that any mention of Ramirez having sexual contact with the complainant would be "extremely prejudicial" to Vasquez because Vasquez had already conceded that he had sex with the complainant, and, therefore "[o]f course his name's going to be [on the report.]" Vasquez expounds upon that same argument before this Court, arguing that the admission of Ramirez's DNA was crucial to the prosecution's ability to challenge Vasquez's account; namely, that Vasquez had consensual sex with the complainant and never saw Ramirez on the bed. Vasquez's recollection of events is discussed in more detail *infra*.

inactions to form conclusions about Vasquez's guilt, but rather as evidence of the "state of mind or the circumstances of the events that were taking place * * *."

Lupino continued her testimony. She described for the jury what DNA is and how DNA analysis works, both in the abstract and as applied to the instant case. She explained that the DNA samples, which consisted of seminal fluid and saliva, were retrieved from the underwear the complainant was wearing at the time of the incident, and that those samples were consistent with the reference buccal swab obtained from Vasquez. Lupino concluded that, to a reasonable degree of scientific certainty, the samples taken from the complainant's underwear, as well as the swabs taken from the complainant's vagina and bra, contained DNA consistent with Vasquez's DNA profile. Subsequently, the trial broke for a recess.

After the recess but before the jury returned, Vasquez moved to strike the entirety of Lupino's testimony on the grounds that she was not the analyst who performed the testing, arguing that Vele had conducted the testing "and she has not testified in this court." Vasquez argued that Lupino "just confirmed [Vele's] findings. She [did not] participate in the testing, nor did she do any of the testing" and that, therefore, there was "a confrontation issue with her testimony" and "that the correct person to testify should have been [Vele]."

In response, the state pointed out that Vasquez did not object on that basis during Lupino's testimony and that it "was very clear to the jurors" that she had not

performed the testing herself.[2]  The state contended that Lupino reviewed and confirmed the results and was "perfectly qualified to testify" and further that Vasquez could confront Lupino about the DNA findings the same as he could Vele.

The trial justice denied the motion to strike, noting that Vasquez did not timely object on the basis of the Confrontation Clause prior to or during Lupino's testimony.  The trial justice referred to this Court's decision in *State v. Lopez*, 45 A.3d 1 (R.I. 2012), which he stated held "that the testimony of a supervisory DNA analyst who was involved in the review of an examiner's report was an appropriate and a perfect person to testify and be available for cross-examination."  The jury returned, and the trial continued.  Defense counsel declined to cross-examine Lupino, thus concluding her testimony.

Detective Patrick McGaffigan (Det. McGaffigan) next testified for the state, recounting his involvement in the case as an investigating officer.  Detective McGaffigan testified that he had taken a statement from the complainant and received her clothing and text messages as evidence.  After meeting with the complainant, Det. McGaffigan, his partner, and Sergeant Javier Cabreja, a

---

[2] Vasquez lodged only two objections during Lupino's testimony.  The first objection, discussed *supra*, was to the admission of the DNA reports.  Vasquez later objected when the prosecutor asked Lupino how a sample, which matched neither Vasquez nor Ramirez, could have been left on the complainant's underwear.  Vasquez objected on the basis that the question called for speculation.  The trial justice overruled that objection, and Lupino answered.

Spanish-speaking officer who could assist with interpretation, went to Vasquez's home and asked him to come speak with them at the station. Vasquez cooperated, following the officers in his own vehicle to the station for an interview. Detective McGaffigan described his interview of Vasquez for the jury, an audio recording of which was played, accompanied by a transcript. The state entered both the audio recording and the transcript as full exhibits. Detective McGaffigan also took a written statement from Vasquez, which Det. McGaffigan read into the record.[3]

In both his interview and written statement, Vasquez recounted many of the same details the complainant had testified to in regard to their friendship and the social gathering but departed substantially from her narrative in describing the latter portion of the evening and the early morning hours. Specifically, Vasquez denied that he had kissed the complainant outside the bathroom. Moreover, Vasquez stated that during the car ride from the party, he and the complainant began to kiss and then both agreed to go to a motel room. Vasquez alleged that while at the motel the two engaged in consensual sex during which the complainant was conscious. After Vasquez finished writing his statement, he departed the police station.

---

[3] During the verbal interview, Vasquez spoke in some English and some Spanish. Sergeant Cabreja acted as a translator for Vasquez, as reflected in the transcript of the interview. Vasquez gave his written statement in Spanish. The original written statement and an accompanying English translation were both entered as full exhibits and given to the jury. Detective McGaffigan read from the translation.

Detective McGaffigan next testified that later in the investigation he received a report from the Department of Health which identified three male DNA contributors present on the complainant's clothing and the swabs taken from the complainant. In response to this new information, Det. McGaffigan obtained a search warrant for a DNA swab from both Vasquez and Ramirez, with which the two men complied. Subsequently, Det. McGaffigan received an updated report from the Department of Health, which showed that both Vasquez's and Ramirez's DNA were present on the complainant's clothing.

Lastly, Vasquez testified in his own defense. Vasquez described his relationship with the complainant, explaining that the two had been friends for several years and were planning to have a serious relationship. Vasquez conceded that he had sex with the complainant on the night or early morning in question, but stated it was consensual and denied ever violating her. Vasquez denied that the complainant was ever unconscious or drunk at the motel that night.

The jury found Vasquez guilty on the single count. He received a sentence of twenty-five years of incarceration at the ACI, with twelve years to serve, and thirteen years suspended, with probation. A judgment of conviction and commitment entered, from which Vasquez filed a valid, albeit premature, notice of appeal.[4]

---

[4] "A notice of appeal filed after the announcement of a decision, sentence, or order but before entry of the judgment or order shall be treated as filed after such entry

Before this Court, Vasquez asserts one claim of error: that the trial justice erred in denying his motion to strike all of Lupino's testimony because she was not the analyst who performed the DNA testing. Vasquez claims that Lupino's testimony violated his Sixth Amendment right to confront the witnesses against him and his right under article I, section 10 of the Rhode Island Constitution because she was not the analyst who performed the testing.[5]

**Discussion**

"This Court reviews *de novo* a party's allegation that a constitutional right has been infringed." *State v. Barkmeyer*, 949 A.2d 984, 1002 (R.I. 2008). However, before we reach the merits of Vasquez's argument, we must first consider whether it has been properly preserved for our consideration. "The raise-or-waive rule is a fundamental precept that is staunchly adhered to by this Court." *State v. Ricker*, 252 A.3d 721, 730 (R.I. 2021) (quoting *State v. Parrillo*, 228 A.3d 613, 623 (R.I. 2020)). Under this well-settled rule, "issues not properly presented before the trial court may not be raised for the first time on appeal." *Smith v. State*, 327 A.3d 374, 379 (R.I. 2024) (quoting *Cronan v. Cronan*, 307 A.3d 183, 192 (R.I. 2024)).

---

and on the day thereof." *State v. Li*, 297 A.3d 908, 916 n.9 (R.I. 2023) (quoting Article I, Rule 4(b) of the Supreme Court Rules of Appellate Procedure).

[5] Although Vasquez raised a violation of article I, section 10 of the Rhode Island Constitution in his brief, he did not discuss in his papers whether article I, section 10 is meaningfully different from the Sixth Amendment. At oral argument, Vasquez stated he was making no distinction. Therefore, we address only the Sixth Amendment.

The state argues that the Confrontation Clause issue is not properly preserved for appeal, which Vasquez concedes. Nevertheless, Vasquez argues that, in light of the United States Supreme Court's decision in *Smith v. Arizona*, 602 U.S. 779 (2024), discussed *infra*, issued during the pendency of his appeal, the state's failure to present Vele as a witness violated the Confrontation Clause.[6]

"When an intervening decision of this Court or of the Supreme Court of the United States establishes a novel constitutional doctrine, counsel's failure to raise the issue at trial will not preclude our review." *State v. Moten*, 64 A.3d 1232, 1240 (R.I. 2013) (brackets omitted) (quoting *State v. Burke*, 522 A.2d 725, 731 (R.I. 1987)). For this narrow exception to apply, "the alleged error must be more than harmless, and the exception must implicate an issue of constitutional dimension derived from a novel rule of law that could not reasonably have been known to counsel at the time of trial." *Id.* (quoting *State v. Breen*, 767 A.2d 50, 57 (R.I. 2001)).

---

[6] Vasquez did not discuss waiver in his briefing before this Court. In his brief, Vasquez argued that under *Smith v. Arizona*, 602 U.S. 779 (2024), this Court's decision in *State v. Lopez*, 45 A.3d 1 (R.I. 2012), is no longer controlling on the confrontation issue and that the erroneous admission of Lupino's testimony was not harmless. Vasquez did not file a reply brief after the state raised waiver in its briefing. At oral argument, Vasquez explicitly conceded that the motion to strike made during the trial was insufficient to preserve the confrontation issue for appeal. However, during oral argument, Vasquez argued that the narrow exception to the waiver doctrine espoused by this Court in *State v. Moten*, 64 A.3d 1232 (R.I. 2013), should apply. For the reasons discussed, we disagree.

Vasquez argues that *Smith* introduced a novel rule of law of constitutional dimension not applicable at the time of his trial. Relying on *Moten*, Vasquez contends that the timing and basis of his objection at trial is immaterial because, prior to *Smith*, there was no basis in the law for his objection to Lupino's testimony. The state argues that the *Moten* exception should not apply because (1) Vasquez articulated at trial the same basis he now asserts on appeal, and (2) this Court, in *Moten*, already decided that the same issue of law is not novel. We agree.

In *Moten*, the defendant argued that two cases decided during the pendency of his appeal, *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), and *Bullcoming v. New Mexico*, 564 U.S. 647 (2011), both issued well after and relying on *Crawford v. Washington*, 541 U.S. 36 (2004), should preclude the application of the raise-or-waive rule to his appeal. *Moten*, 64 A.3d at 1241. We declined to apply the narrow exception, holding that *Bullcoming* and *Melendez-Diaz* "merely appl[ied] the rule announced in *Crawford*" and therefore could not "be considered to have established a 'novel constitutional rule.'" *Id.* In analyzing both cases, this Court pointed out that the *Melendez-Diaz* decision held that affidavits containing forensic analysis were testimonial in nature under *Crawford* and that the *Bullcoming* decision held that "surrogate testimony" of an analyst who had not actually performed the

relevant testing "'does not meet the constitutional requirement' of the Sixth Amendment." *Id.* (quoting *Bullcoming*, 564 U.S. at 652).[7]

*Smith*, which Vasquez contends announced a novel constitutional rule, "concern[ed] the application of [Confrontation Clause] principles to a case in which an expert witness restates an absent lab analyst's factual assertions to support his own opinion testimony." *Smith*, 602 U.S. at 783. In assessing that issue, the Court analyzed and relied upon *Melendez-Diaz*, *Bullcoming*, and *Williams v. Illinois*, 567 U.S. 50 (2012) (plurality opinion), ultimately abrogating only *Williams*.[8] *See id.* at

---

[7] This Court, in *Moten*, has already laid out in great detail the facts and analysis of both *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), and *Bullcoming v. New Mexico*, 564 U.S. 647 (2011), and we decline to do so to the same extent here. *Moten*, 64 A.3d at 1241. However, for the sake of clarity, we set forth the relevant principles briefly. *Melendez-Diaz* concerned the admission of certificates of forensic analysis, submitted into evidence by the prosecution, which stated that a substance seized from the defendant was cocaine. *Melendez-Diaz*, 557 U.S. at 308. The Court held that the certificates were testimonial in nature; and, applying *Crawford v. Washington*, 541 U.S. 36 (2004), the analysts who performed the relevant testing of the substance were witnesses whom the defendant had the right to confront at trial. *Id.* at 310-11. *Bullcoming* concerned the admission of a laboratory report that indicated the defendant's blood-alcohol concentration. *Bullcoming*, 564 U.S. at 651. The prosecution introduced the report through an analyst who had not performed the relevant testing but was familiar with the laboratory's procedures. *Id.* The Court ultimately determined "that surrogate testimony of that order does not meet the constitutional requirement [of the Confrontation Clause]." *Id.* at 652.

[8] In short, *Williams v. Illinois*, 567 U.S. 50 (2012) (plurality opinion) concerned the admission of DNA testimony introduced through a forensic specialist who did not testify regarding how the relevant sample was tested or handled, nor did she testify to the accuracy of the testing. *Williams*, 567 U.S. at 56-57. The Court, in a plurality opinion, determined that the testimony was not entered for its truth, but rather to explain the assumptions on which the expert based her opinions. *Id.* at 78-79. Therefore, the Court reasoned, *Crawford* was not implicated. *Id.* at 79.

789 ("Our opinions in *Williams* 'have sown confusion in courts across the country' * * *. This case emerged out of that muddle.") (quoting *Stuart v. Alabama*, 586 U.S. 1026, 1027 (2018) (Gorsuch, J., dissenting from denial of certiorari)). However, it is clear from the record that Vasquez's motion to strike was based on *Melendez-Diaz* and *Bullcoming*, which remain unaffected by *Smith*. *See id.* at 799 (stating that allowing a substitute analyst to simply read the testing analyst's notes "would make our decisions in *Melendez-Diaz* and *Bullcoming* a dead letter, and allow for easy evasion of the Confrontation Clause. As earlier described, those two decisions applied *Crawford* in 'straightforward' fashion to forensic evidence.") (quoting *Melendez-Diaz*, 557 U.S. at 312).

Specifically, after the conclusion of Lupino's direct-examination testimony and a recess, Vasquez stated:

> "I would move to strike all [of Lupino's] testimony on the grounds that the person who did the testing is [Vele] and she has not testified in this court. [Lupino] just confirmed her findings. She didn't participate in the testing, nor did she do any of the testing; and I believe that we have a confrontation issue with her testimony that the correct person to testify should have been [Vele]. So I move to strike all her testimony. That's under the cases of *Bullcoming* and also *Melendez-Diaz*.
>
> "* * *
>
> "*Bullcoming* and *Melendez-Diaz* and [*sic*] talk about confrontational issues and surrogate witnesses; and I just believe that in the interest of justice in the confrontation

- 14 -

> clause that the testimony should not be allowed to come into evidence."

It can hardly be said that the alleged error "implicate[d] an issue of constitutional dimension derived from a novel rule of law that could not reasonably have been known to counsel at the time of trial." *Moten*, 64 A.3d at 1240 (quoting *Breen*, 767 A.2d at 57). In his motion to strike, Vasquez explicitly relied on *Melendez-Diaz* and *Bullcoming*. *Bullcoming*, as we pointed out in *Moten*, directly addressed the inadmissibility of surrogate analyst testimony, which is the exact issue Vasquez untimely raised before the trial court and now raises before us. *See id.* at 1241. *Smith* did not alter the contours of *Melendez-Diaz* and *Bullcoming*, and therefore does not save Vasquez's appeal. *See id.* at 1242 ("Certainly, at the time of defendant's trial, the Supreme Court had not established the precise contours of what is and what is not 'testimonial evidence.' That does not mean, however, that each Supreme Court case applying *Crawford* announces 'a novel constitutional rule.'").

We acknowledge that the area of law in question may be somewhat unsettled. However, that a new decision arises in an unsettled area of law does not automatically rise to the level of "a novel constitutional rule" such that our strict raise-or-waive rule should not apply. *See Moten*, 64 A.3d at 1243 ("If that were the standard, then virtually every constitutional decision of the Supreme Court would provide defendants an opportunity to take advantage of the exception. There would be nothing 'narrow' about such an outcome * * *."). It is true that, in light of *Smith*,

- 15 -

this Court may need to revisit *Lopez* in the future.  However, for the reasons set forth herein, we will not now do so on the record before us.

## Conclusion

We affirm the Superior Court's judgment of conviction.  The record in this case may be returned thereto.

Justice Goldberg participated in the decision but retired prior to its publication.

**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Francisco Vasquez. |
| **Case Number** | No. 2024-57-C.A. (K1/22-56A) |
| **Date Opinion Filed** | June 18, 2026 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Luis M. Matos |
| **Attorney(s) on Appeal** | For State:<br><br>Brendan P. Sullivan<br>Department of Attorney General |
| | For Defendant:<br><br>John L. Calcagni, III, Esq. |